Hillsborough,
No. 5159.

EVA MORIN *v.* MANCHESTER HOUSING AUTHORITY.

Argued October 2, 1963.
Decided November 5, 1963.

*James M. Winston* (by brief and orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the defendant.

DUNCAN, J. There was evidence from which it could be found that the wire over which the plaintiff fell was originally a part of a "fence" around a small area of lawn adjoining the side-

walk in front of one of the defendant's apartments; and the one end of the wire had been detached by an unknown person or persons and fastened to a tree on the opposite side of the public walk, so as to form a low barrier across the walk. The accident occurred in darkness as the plaintiff was using the sidewalk to reach her home. No claim is made that the wire had been across the sidewalk for sufficient time so that the defendant should have discovered it before the accident. *Jakel* v. *Brockelman*, 91 N. H. 453; *Partin* v. *A & P Tea Co.*, 102 N. H. 62, 64.

There was evidence that the original wire enclosure had been put in place by an occupant of one of the defendant's apartments. It consisted of a single strand of steel wire attached to "poles" or iron pipe, driven into the ground.

The defendant's maintenance foreman, whose duty it was to patrol the project in order to "keep it in shape," testified that he understood that tenants were not permitted by their leases to maintain fences, and that he always reported them to the supervisor of the project, and at times removed them. He stated that he permitted this particular fence to remain "because the lady had planted the area and she put the fence up to protect her area, and we let it go at that."

On the morning following the accident, the foreman discovered a ten-foot piece of the wire fence lying partly upon the sidewalk, and still attached at one end to the tree.

He testified that the project housed some two hundred families and approximately six hundred children. It was his opinion that such wire enclosures "become a hazard . . . anyone can trip over them. Children playing around can trip over them, and they're . . . [un]sightly thing[s] to begin with." Although he would not say that they were a hazard because numerous children lived in the project, he foresaw the possibility of children interfering with the wires, considered them a hazard for that reason, and so advised his supervisor.

It is established law in this jurisdiction that the owner or possessor of premises bordering a public highway or sidewalk is under a duty to prevent artificial conditions on his land from being unreasonably dangerous to travelers upon an adjoining highway. *Chickering* v. *Thompson*, 76 N. H. 311; *Paine* v. *Hampton Beach &c. Co.*, 98 N. H. 359; Restatement, Torts, *s.* 358. There was no evidence in this case that the area which

had been fenced in was in the exclusive possession of the defendant's tenant. On the contrary, it could be found from the evidence that the defendant exercised control over the grounds of the project and retained possession of them for the common use of its tenants. *Guyer* v. *Horgan*, 96 N. H. 288. In these circumstances, the defendant was under a duty to exercise care to prevent injury to passers-by on the highway from conditions maintained on the premises. 2 Harper & James, The Law of Torts, *s.* 27.4. Thus if the plaintiff, as a result of involuntarily straying from the walk, had fallen over a wire bordering the walk the defendant clearly could be found liable. *Chickering* v. *Thompson, supra; Langevin* v. *Company*, 81 N. H. 446.

In the case before us however, the evidence did not show that the wire enclosure on the lawn was so situated with reference to the edge of the sidewalk as thereby to create a risk of injury to users of the walk; and the plaintiff was not injured by tripping over the wire in its original position. The issues presented at the trial were whether the defendant Authority could reasonably be found negligent in failing to appreciate and guard against a risk of injury to passers-by as a result of intermeddling with the wire by children or others; and if so, whether the intervention of such intentional acts by others would operate to relieve the defendant of liability.

In setting aside the verdict, the Trial Court must be presumed to have determined either that the defendant was not negligent because the risk to the public could not reasonably be found so serious that reasonable men would have acted to prevent it (*Tullgren* v. *Company*, 82 N. H. 268, 276; *Wisutskie* v. *Malouin*, 88 N. H. 242), or that the defendant was relieved of liability as a matter of law by a superseding cause of the accident which the defendant could not reasonably be found to have a duty to foresee. *Hurd* v. *Railroad*, 100 N. H. 404, 408. Whether the Trial Court could reasonably reach either conclusion is the issue to be decided by this court. *Wisutskie* v. *Malouin, supra.*

On the record before us, we think that the orders of the Trial Court must be sustained. In determining whether or not reasonable men could find the defendant negligent, consideration is to be given to the magnitude of the risk of injury, as compared with the utility of the defendant's conduct in allowing the enclosure to remain where the tenant placed it. Restatement,

Torts, *ss.* 291-293. More specifically, the issue is whether "there [was] some probability of harm sufficiently serious that ordinary men would take precaution to avoid it." *Tullgren* v. *Company, supra,* 276. If so, failure to take reasonable precaution would be negligent. In this case any finding of causal negligence on the part of the defendant would have to rest upon a breach of duty to foresee, and take preventive action against the risk of intentional interference with the wire by others in a way likely to cause injury to passers-by.

While the defendant's agent foresaw a "hazard" that persons or children might trip over the enclosure, and that children might intermeddle with the wire, he did not consider it so grave that he removed the enclosure, although he had done so in other instances. There was no evidence that the wire was in any way detached from its supports so as to invite children to change its location. Nor was there any evidence of prior interference with this or other fences which might be cause to apprehend wrongful conduct by others such as in fact occurred.

The wrongfulness or "illegality of the act is a reason for not apprehending it." *McCaffrey* v. *Company,* 80 N. H. 45, 54. No special circumstances in the case were shown to exist which could reasonably be thought a counterbalancing reason to anticipate wrongful conduct on the part of others. *Id. Cf. Broser* v. *Sullivan,* 99 N. H. 305, 307. The "established principle that one must apprehend the ordinary conduct of children" (*McCaffrey* v. *Company, supra,* 54) did not permit a finding in this case that the conduct which was the immediate cause of the plaintiff's injury was "ordinary conduct" to be apprehended by the defendant. See Restatement, Torts, *s.* 443, *comment* b. No evidence indicated a reason to anticipate the extraordinary conduct which occurred, of setting a trap for pedestrians. The simple device used to enclose the lawn hardly created a situation "at a place where persons of peculiarly vicious type are likely to be" which should be "realized as likely to lead to the commission of fairly definite types of crime." Restatement, Torts, *s.* 448, *comment* b. *Cf.* Restatement, Torts, *s.* 302(b). Since the defendant could not reasonably be held to a duty to anticipate that the fence would cause injury to sidewalk travelers, its failure to remove the fence could not properly be found causal of the plaintiff's injury. See Restatement, Torts, *ss.* 447, 449; *cf. Maxfield* v. *Maxfield,* 102 N. H. 101.

Accordingly we hold that the record required as a matter of law a finding that the intervening conduct of the strangers who strung the wire across the walk was not reasonably to be apprehended by the defendant, and was the sole and superseding cause of the plaintiff's injury, for which the defendant was not liable. *Glassey* v. *Worcester &c. Street Railway*, 185 Mass. 315; Restatement, Torts, *s.* 448, *supra*. See Prosser on Torts (2d *ed.*) *p.* 279; 2 Harper & James, The Law of Torts, *s.* 20.5, *p.* 1144.

It follows that the Trial Court properly ruled that the verdict was against the weight of the evidence, and unwarranted by it.

*Exceptions overruled.*

All concurred.