Rockingham,
No. 5553.

MARION F. LANE & a.

*v.*

CATHERINE M. GROETZ, *Adm'x.*

Argued February 7, 1967.
Decided June 30, 1967.

*Perkins, Holland & Donovan* and *William H. M. Beckett* ( *Mr. Beckett* orally ), for the plaintiffs.

*Devine, Millimet, McDonough, Stahl & Branch* and *Joseph M. McDonough* III ( *Mr. McDonough* orally ), for the defendant.

DUNCAN, J. In December 1960, the plaintiff, Mrs. Lane, was employed as a practical nurse to care for the defendant's intestate, Miss O'Neil, a woman who according to the evidence " had hardening of the arteries " and whose " mental condition was very bad. " The plaintiffs' evidence tended to show that Miss O'Neil's house was in the charge of Mrs. Mattison, who paid the nurses with funds belonging to Miss O'Neil by checks issued by Mrs. Mattison's son. The plaintiff testified that as a practical nurse she took " care of hospital cases, people in nursing homes and hospitals, " but the nature of her duties while employed by Miss O'Neil was not disclosed.

Mrs. Lane testified that on January 10, 1961, " there was about three foot of snow piled up side of the road " in Exeter, and the streets were very icy, and had been for several days. Prior to January 10, 1961, the nurses working at Miss O'Neil's had found it necessary, in order to gain access to the house from the street, to reach the main sidewalk by means of a driveway to an adjoining house, and then to proceed by the main sidewalk to a walkway to a side door of the O'Neil house.

On January 9, 1961, Mrs. Lane overheard Mrs. Mattison call "the town" by telephone and ask that a man be furnished to shovel a path from the street to the sidewalk at the O'Neil house, for which Mrs. Mattison offered to pay. On the same day, Mrs. Mattison asked Mrs. Lane to bring some bakery goods to the house when she came on duty the next afternoon, and furnished her funds with which to purchase them.

On January 10, 1961, Mrs. Lane proceeded by taxi from her home in Exeter to the O'Neil house, where she found a narrow path newly shoveled in front of the house. Her taxi stopped in the street just short of the end of the path, and the plaintiff undertook to enter the path toward the sidewalk, carrying her "nurse's bag," and three boxes of bakery products tied together with string. Although the taxi driver offered her assistance, she declined it. Her view of the path was obscured by what she was carrying, and as she took two steps to enter the pathway her foot slipped and she fell in the street with her feet in the pathway. As a result she fractured her leg. There was evidence that the path crossed a metal grating located in a depression in the street and that the grating and the pathway were ice covered. Mrs. Lane testified that "it was the iron of the drain," and "the slant and the ice there" which caused her to fall.

Whether Mrs. Lane had the status of an employee of Miss O'Neil, or of an independent contractor (see Annot. 60 A.L.R. 303), it was the duty of Miss O'Neil, or of those acting with authority on her behalf, to furnish Mrs. Lane with a reasonably safe place to work. *Moore* v. *Company*, 89 N. H. 332; 333. See 27 Am. Jur. 510, Independent Contractors, *s.* 30; Annot. 31 A.L.R. 2d 1375, 1379. The evidence does not admit of a finding that the plaintiff's work place included the public street. The argument that the decedent failed to provide the plaintiff with a reasonably safe place to perform the work which she was hired to do is not supported by the record. In entering upon the decedent's premises, Mrs. Lane did so as an invitee, to whom Miss O'Neil owed the duty of taking reasonable care to see that the premises were reasonably safe. *Mutterperl* v. *Lake Spofford Hotel*, 106 N. H. 538, 541; *Jacobson* v. *Yoken's, Inc.,* 104 N. H. 331. See *Dowd* v. *Portsmouth Hospital*, 105 N. H. 53. This duty however related only to the premises which the decedent possessed or over which she had control. *Gossler* v. *Miller*, 107 N. H. 303; *Paine* v. *Hampton Beach &c. Co.*, 98 N. H. 359,

364; *Morin* v. *Manchester Housing Authority,* 105 N. H. 138, 139; see Restatement ( Second ), Torts, *s.* 349; Restatement ( Second ), Agency, *s.* 497, *comment* c.

As to the abutting street, the decedent's duties were confined to exercising reasonable care to see that activities conducted on her premises, or conditions allowed to exist thereon, posed no threat to users of the public way. *Gossler* v. *Miller, supra*; *Abell* v. *Company,* 95 N. H. 439; *Montrone* v. *Archambault,* 99 N. H. 179; *MacLean* v. *Parkwood, Inc.,* 354 F. 2d 770 ( 1st Cir. 1966 ). The case of *United States F. & G. Co.* v. *Gagne,* 103 N. H. 420 relied upon by the plaintiff is not authority to the contrary, since the issue in that case was not one of negligence, but of statutory liability of an employer for injury to an employee arising out of and in the course of the employment.

It is contended that the evidence in the case before us would warrant an inference that the pathway in which the plaintiff fell was cleared by direction of the decedent or her agents, and that having voluntarily undertaken to provide a path, it became the decedent's duty to exercise reasonable care in doing so. *Tullgren* v. *Company,* 82 N. H. 268; *Smith* v. *Am. Employers' Ins. Co.,* 102 N. H. 530, 533. Again, however the record does not support the contention. If it might be inferred that the path was cleared by " the town " pursuant to Mrs. Mattison's request, there is no evidence that its agents became Miss O'Neil's servants for that purpose, or that the town acted in any capacity other than as an independent contractor, or a municipality carrying out its duty to keep the streets passable. RSA 231:7; 247:9, 10. See *Hall* v. *Manchester,* 40 N. H. 410.

No claim was made that the decedent or her agents exercised any supervision or control over performance of the work, nor is there evidence that they were or should have been aware that it created any risk of injury to the plaintiff, or other invitees of the decedent. See Annot. 88 A.L.R. 2d 339, 405. It was not a " necessary and anticipated part of the work " which the decedent sought to have done, that the path should cross the street drain, and this consequence of causing the path to be made was not " naturally to be apprehended " in advance. *Cf. Thomas* v. *Harrington,* 72 N. H. 45, 46; *Carr* v. *Merrimack Farmers Exchange,* 101 N. H. 445. See Prosser on Torts ( 3d *ed.* ) 485.

Since there was no evidence of circumstances giving rise to any duty to the plaintiff on the part of the decedent, the motions for

nonsuit were properly granted. *Flynn* v. *Gordon*, 86 N. H. 198; *Cote* v. *Litawa*, 96 N. H. 174. Accordingly there is no occasion to consider the contention that Mrs. Lane was contributorily negligent as a matter of law, or to pass upon other issues argued by the parties. The order in each case is

*Exception overruled.*

WHEELER, J., sat at argument but took no part in the decision; GRIMES, J., did not sit; the others concurred.