Alfred WILSON et al., Plaintiffs,
Appellants,

v.

NOOTER CORPORATION, Defendant
and Third Party Plaintiff, Appellee,

v.

The H. K. FERGUSON COMPANY,
Third Party Defendant, Appellee.

Alfred WILSON et al., Plaintiffs,
Appellees,

v.

NOOTER CORPORATION, Defendant
and Third Party Plaintiff, Appellant,

v.

The H. K. FERGUSON COMPANY,
Third Party Defendant, Appellee.

Nos. 74–1056, 74–1057.

United States Court of Appeals,
First Circuit.

Heard June 4, 1974.

Decided July 11, 1974.

---

Dort S. Bigg, Manchester, N. H., with whom Larry B. Pletcher and Wiggin, Noirie, Sundeen, Pingree & Bigg, Manchester, N. H., were on brief, for Alfred Wilson and others.

James E. Higgins, Manchester, N. H., with whom Joseph F. Devan and Sheehan, Phinney, Bass & Green, Manchester, N. H., were on brief, for The H. K. Ferguson Co.

Martin L. Gross, Concord, N. H., with whom Sulloway, Hollis, Godfrey & Soden, Concord, N. H., were on brief, for Nooter Corp.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This diversity case is before us for the second time. Briefly, the facts are as follows. Third-party defendant Ferguson, an Ohio corporation, was general contractor for the construction of a brewery in Merrimack, N. H. Defendant Nooter, a Missouri corporation, was subcontractor in charge of installing brewing equipment. Nooter desired to remove a ten-foot long "I" beam from the partially completed building. To do so, it used a crane owned by Ferguson and operated by two Ferguson employees. At the time, plaintiff Wilson, also a Ferguson employee, was standing on a staging several feet below, engaged in brick-laying. As the crane's boom removed the beam from the building, the boom began to move laterally. A pin protruding from the beam snagged one of the cables supporting the staging, causing it to move away from the building. Wilson clung to the wall that he had been working on. The staging then swung back to the wall, injuring Wilson in the back. At trial, it was acknowledged that the crane had a switch which would have prevented the lateral movement of the boom. The crane operators, however, did not turn it on.[1]

Wilson and his wife brought these actions against Nooter which in turn filed a third-party complaint against Ferguson for indemnity. At the close of the evidence in the first trial, the court directed verdicts against Nooter for the Wilsons and Ferguson finding as a matter of law that the Ferguson employees operating the crane were at the time "borrowed servants" of Nooter. We reversed and remanded for a new trial, holding that under New Hampshire law the borrowed-servant issue was a factual one which should have been submitted to the jury. Wilson v. Nooter Corp., 475 F.2d 497 (1st Cir.), cert. denied, 414 U. S. 865, 94 S.Ct. 116, 38 L.Ed.2d 85 (1973).

At the second trial, the court submitted three questions to the jury: (1) Was the accident caused by negligence of a Nooter employee, Nelson, who was directing the crane with hand signals? (2) Was the accident caused by negligence of the Ferguson employees actually operating the crane? (3) Were the Ferguson employees who were operating the crane borrowed servants of Nooter? The jury answered the first question in the negative, the second in the affirmative and the third in the negative. Consequently, the court entered judgment for Nooter against the Wilsons.[2] Their

---

1. A more detailed statement of facts can be found in our first opinion. Wilson v. Nooter Corp., infra.

2. The New Hampshire Workmen's Compensation Law, N.H.Rev.Stats.Ann. ch. 281:12 (1973 Supp.), bars an employee or spouse from bringing a tort action against the employer. The employee must rely instead on the statute for relief. See, e. g., Reed v. New England Tel. & Tel. Co., 175 F.Supp. 409 (D.N.H.1958). Therefore, Wilson and his wife could not recover against Ferguson, his employer, based on the negligence of the crane operators, both of whom were Ferguson employees. However, the statute expressly permits an employee to bring a tort action against third parties, such as Nooter. N.H.Rev.Stats.Ann. ch. 281:14 (1966).

motion for judgment notwithstanding the verdicts was denied.

In this appeal, the Wilsons contend, first, that the court erred in refusing to charge the jury with respect to the "inherent danger" doctrine, and, second, that the evidence required a directed verdict in their favor with respect to alleged negligence of Nooter employee Nelson. We affirm.

The "inherent danger" doctrine was first expressed by the New Hampshire court in Thomas v. Harrington, 72 N.H. 45, 54 A. 285 (1903).[3] There, the defendants hired a third party to install a water pipe into their house. To carry out this task, the third party dug a ditch 12 feet long, 5½ feet deep and 2 feet wide in the street in front of the house. Plaintiff was thrown from her carriage and injured when her horse fell into the ditch. In reversing a directed verdict for defendants, the court found that it was "not open to doubt" that the defendants "had in mind the excavation of a ditch in the highway" at the time they contracted with the third party for the water-pipe installation. 72 N.H. at 46–47, 54 A. at 286:

> "Such an excavation in a street is a nuisance, because it renders public travel dangerous, and makes extra precautions necessary for the protection of travelers. Hence it became the duty of the defendants, who authorized and caused the ditch to be dug, to protect the public from the danger occasioned thereby. . . . The danger arose directly from the work which they required to be done, and not from the negligent manner of its performance. In such a case one cannot avoid responsibility for the consequences naturally to be apprehended in the course of the performance of the work by employing another to do the work as an independent

contractor. Upon the modern authorities, the question of liability, under such circumstances, does not depend upon an inquiry whether the parties sustain the relation of master and servant, or whether the contract between them makes the employe an independent contractor. The employer cannot absolve himself from the duty which, under the law, he owes to another with reference to the performance of work which is dangerous in itself—as the digging of a ditch in the highway."

*Id.*

 Review of the New Hampshire cases since *Thomas* reveals two main principles. First, the inherent-danger doctrine applies only where the alleged danger was "naturally to be apprehended" by the defendant at the time it arranged with an independent contractor to carry out the work.[4] The New Hampshire court made that finding in *Thomas*, and similar findings were made, or at least were permitted, in Carr v. Merrimack Farmers Exch., 101 N.H. 445, 146 A.2d 276 (1958); Nashua Gummed & Coated Paper Co. v. Noyes Buick Co., 93 N.H. 348, 41 A.2d 920 (1945), and Canney v. Rochester Agricultural & Mechanical Ass'n, 76 N.H. 60, 79 A. 517 (1911). *See also* Stevens v. United Gas & Elec. Co., 73 N.H. 159, 60 A. 848 (1905) (construing analogous tort doctrine). In contrast, the New Hampshire court held that the inherent-danger doctrine was inapplicable in Lane v. Groetz, 108 N.H. 173, 230 A.2d 741 (1967), where an independent contractor shoveled a path in the snow directly across a metal grating, causing an unwary pedestrian to slip and fall:

> "It was not a 'necessary or anticipated part of the work' which the decedent [defendant's intestate] sought to have done, that the path should cross the

3. The seeds of the doctrine can be discerned in dicta of earlier New Hampshire cases. *See* Pittsfield Cottonwear Mfg. Co. v. Pittsfield Shoe Co., 71 N.H. 522, 53 A. 807 (1902); City of Manchester v. Warren, 67 N.H. 482, 32 A. 763 (1893); Knowlton v.

Hoit, 67 N.H. 155, 30 A. 346 (1892); Carter v. Berlin Mills, 58 N.H. 52 (1876).

4. This is an objective test. *See* Carr v. Merrimack Farmers Exch., 101 N.H. 445, 449, 146 A.2d 276, 279–280 (1958).

street drain, and this consequence of causing the path to be made was not 'naturally to be apprehended' in advance. *Cf.* Thomas v. Harrington, 72 N.H. 45, 46, 54 A. 285, 65 L.R.A. 742; Carr v. Merrimack Farmers Exchange, 101 N.H. 445, 146 A.2d 276. See Prosser on Torts, (3rd ed.) 485."
*Id.* at 176, 230 A.2d at 744.

The second principle is that the determination of inherent danger should not be based on broad generalizations, but instead on the particular facts in each case. Thus, in *Carr, supra,* the court acknowledged that transportation of baled hay on a public highway was generally not an inherently dangerous activity. Nevertheless, where plaintiff alleged that the defendant shipper knew beforehand that the hay in that case was insecurely loaded on an open platform trailer, the court held that plaintiff had stated a valid cause of action against the shipper under the inherent-danger doctrine.[5] *Cf.* Nashua Gummed & Coated Paper Co. v. Noyes Buick Co., *supra* (use of acetylene torch is inherently dangerous when ordered done in an area with highly inflammable materials near at hand).

Applying these principles to the instant case, we hold that under New Hampshire law the trial court properly excluded the inherent-danger issue from the jury's consideration. The accident resulted from the lateral movement of the boom as it pulled the beam from the building. This movement was not a necessary or anticipated part of the project.

It could, and should, have been prevented by setting the proper switch in the crane.[6] Wilson did not allege, and the evidence does not show, that Nooter either knew or should have known at the time it engaged the Ferguson crane that the crane's operators would fail to set that switch. In the absence of such knowledge or circumstances charging it with the knowledge, this case is distinguishable from *Carr, supra,* and the other New Hampshire cases applying the inherent-danger doctrine. Instead, it is a case like *Lane, supra,* where the failure to allege advance knowledge of the independent contractor's dangerous act precluded a cause of action based on that doctrine.

Wilson's second contention requires little discussion. Nelson was directing the crane operators with hand signals at the time the beam snagged the cable. The record does not conclusively establish that Nelson's handling of this responsibility was deficient. Moreover, even if it did, the jury could well conclude that only the crane operators' negligence was the actual and/or proximate cause of Wilson's injury. Therefore, the jury's finding that Nelson was not responsible for the injury must stand and Wilson is left to his remedy under the Workmen's Compensation Law.

In view of these holdings, we need not reach the other issues raised by the parties.

Affirmed.

5. Nooter disputes this interpretation of the *Carr* decision, arguing that the New Hampshire court did not apply the inherent-danger doctrine to the facts of that case. However, the passages on which Nooter relies for this conclusion appear to us to be directed at distinguishing between transportation of baled hay in general (not inherently dangerous) and transportation of baled hay with the knowledge that it is insecurely loaded (inherently dangerous). Our interpretation is consistent with the policy behind the doctrine, which is to prevent parties from evading liability for injuries resulting from activities from which they benefit and which they know to be dangerous.

6. Presumably, the jury based its finding of negligence by the crane operators on their failure to set the switch.