**James Harold BELLOTTE, by his father and next friend, James G. Bellotte, and James G. Bellotte, Plaintiffs-Appellants,**

**v.**

**ZAYRE CORP., Defendant-Appellee.**

**No. 75–1183.**

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1975.

Decided March 29, 1976.

---

W. Wright Danenbarger, Manchester, N.H., with whom Dort S. Bigg and Wiggin & Nourie, Manchester, N.H. were on brief, for appellants.

Andrew M. Scherffius, Atlanta, Ga., with whom Joe C. Freeman, Jr., Neely, Freeman & Hawkins, Atlanta, Ga., Philip G. Peters, and Wadleigh, Starr, Peters, Dunn & Kohls, Manchester, N.H. were on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE, Circuit Judge, and THOMSEN, Senior District Judge.*

McENTEE, Circuit Judge.

Plaintiffs in this diversity case appeal from a judgment entered after a jury verdict in favor of defendant, and from a denial of their motions for a new trial and a judgment notwithstanding the verdict. Most of the facts are undisputed and concern a single incident. On the evening of May 22, 1971, five-year old James Bellotte was left in the care of his twelve-year old step-brother Earl while their parents were out. In the course of the evening James put on a pair of cotton pajamas purchased by his parents from defendant Zayre Corporation's department store in Manchester, New Hampshire. When alone in his bedroom he began playing with matches and a lighted match slipped from his fingers and ignited the pajama top which burned rapidly. Despite aid from his brother Earl, James suffered extensive burns on his upper body.

* Of the District of Maryland, sitting by designation.

Plaintiffs raise three claims of error on this appeal and we deal with each in turn. First, plaintiffs assign as error the trial court's instruction to the jury that a deliberate act by Earl was an absolute defense.[1] Plaintiffs allege that this instruction was wrong as a matter of substantive law. Plaintiffs' claim is essentially that Zayre, as the supplier of a product is not relieved of liability by any use that can be reasonably anticipated, and that whether Zayre might have reasonably foreseen a deliberate ignition by children is a jury question. However, such is not the case. New Hampshire law follows the principle that a defendant is relieved of liability by a superseding cause of the accident which he could not reasonably be found to have a duty to foresee. *Morin v. Manchester Housing Authority*, 105 N.H. 138, 141, 195 A.2d 243, 245 (1963). As to the foreseeability of an intentional superseding act, New Hampshire has approved the formulation of the Restatement of Torts 2d § 448, comment b, which outlines the two basic situations where a negligent defendant ought to have reasonably anticipated an intentional tort or criminal act by a third person.[2] *Morin v. Manchester Housing Authority, supra* at 246. Neither of these situations encompass the circumstances of this case, nor do we see any extraordinary circumstances in this case which ought to subject the manufacturer to liability despite the intervening intentional act of a third party. The deliberate setting afire of a child's pajamas by another would not appear to fall within those acts that ought to be anticipated by a clothing supplier.[3] Hence we find no error in the trial court's excluding from the jury's consideration the foreseeability of such a deliberate act and instructing the jury that such an act constituted an absolute defense.[4]

Plaintiffs' second assignment of error is directed at the trial court's instruction on the claim of strict liability in tort. Plaintiffs allege that the trial court improperly defined "unreasonably dangerous" by basing the standard on the viewpoint of the purchasing parent rather than on that of

1. "If you find . . . that the fire was started accidentally, either by a match dropped by Jimmy or Earl, . . . that does not make any difference, and it is no defense on either negligence or strict liability. But if you find that the pajamas were set on fire deliberately by Earl, that is an absolute defense to both claims and you will return a verdict for the defendant."

Plaintiffs also complain because this instruction was not requested by either party but was made *sua sponte* by the judge. There is no substance to this complaint. A trial judge has a duty to charge the jury on the general fundamental rules of law applicable to the principal issues of fact in a case, *Turner Construction Co. v. Houlihan*, 240 F.2d 435, 439 (1st Cir. 1957), and has broad discretion to provide a jury with whatever instructions he thinks are needed. *Fredericks v. American Export Lines*, 227 F.2d 450, 453 (2d Cir.), *cert. denied*, 350 U.S. 989, 76 S.Ct. 475, 100 L.Ed. 855 (1956). Here there was sufficient evidence to support an instruction to the jury on this issue; there was testimony by James' father and mother, and by James himself that he initially told his parents that his brother Earl had tossed the match onto him.

2. These are situations "commonly recognized as affording temptations to which a recogniz-able percentage of humanity is likely to yield" and situations which, if created "at a place where persons of peculiarly vicious type are likely to be, should be recognized as likely to lead to the commission of fairly definite types of crime" or intentional tortious acts. Restatement of Torts 2d § 448, Comment b.

3. There was some testimony in the trial court to the effect that "in cases of clothing flammability accidents, a high number of them were young children who played with matches . . . and got burned." There was also testimony that the Department of Commerce has indicated the need for the development of a "flammability standard" for children's sleepwear. However, while this testimony may have prospective implications for the liability of manufacturers and suppliers of children's clothing, nevertheless in light of New Hampshire law it does not compel a conclusion contrary to our present holding.

4. Further, even if there was error in the trial court's charge as to the effect of a deliberate act, it would be harmless, since, as plaintiffs concede, the "circumstances demonstrate that the jury did in fact find there was no deliberate act."

the consumer child.[5] Resolution of this issue turns on an interpretation of Restatement of Torts 2d, § 402A(1)[6] as adopted by New Hampshire. *Buttrick v. Lessard*, 110 N.H. 36, 260 A.2d 111 (1969). Plaintiffs contend that the injured five-year old child in this case is the ultimate "user" whom the principle embodied in § 402A(1) is designed to cover, and that the question of whether the pajamas were unreasonably dangerous ought to have been framed with reference to the child rather than the purchasing parent. We took advantage of the certification procedure provided by rule 20 of the Supreme Court of New Hampshire (N.H. Rev.Stat.Ann. 490: App.R. 20 (Supp.1975)) and certified this question to that court. In a carefully reasoned and comprehensive opinion, *Bellotte et al. v. Zayre Corp.*, N.H., 352 A.2d 723 issued on January 31, 1976, the court held that "the definition of 'unreasonably dangerous' should be framed in terms of the parent who purchases the pajamas for the five-year old child." (At p. 725.) Accordingly, plaintiffs' claim of error on this question cannot avail.

Finally, plaintiffs contend that the trial court erred in not instructing the jury that the pajamas were unreasonably dangerous even for a purchasing parent as a matter of law. However, we find no merit to this claim. Sellers are not insurers and are not subject to absolute liability. *Elliott v. LaChance*, 109 N.H. 481, 484, 256 A.2d 153, 156 (1969). Under the doctrine of strict liability in New Hampshire, liability is imposed only when the danger is unreasonable. *See Buttrick v. Lessard, supra.* As

evidence of unreasonable danger plaintiffs point to testimony at trial that an average adult consumer would not have known the rapid rate at which flames would spread on the pajamas once ignited. However, there was also evidence that the burning characteristics of the pajama fabric were completely normal and that under the federal Flammable Fabrics Act (15 U.S.C. § 1191 *et seq.*, 67 Stat. 111), in force at the time of the accident, the fabric would be classed as normally flammable. In light of our examination of the record we cannot say it was improper for the trial court to let the jury resolve this question.

*Affirmed.*

---

5. The trial court defined "unreasonably dangerous" as follows:

"Now, I come to the definition for purposes of this case of unreasonably dangerous. And the plaintiffs must prove that the pajamas were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them with the ordinary knowledge, common to the community as to their characteristics.

"Now, the ordinary consumer, for purposes of this case, is the parent of a five-year old child purchasing the pajamas for such a child. And you have to ask yourself this question: what knowledge would such a parent have common to the community as to the flammability characteristics, that is, the

burning characteristics of children's pajamas? And that is the essential issue under this strict liability."

6. Section 402A(1) provides:

"One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."