**Jean CHOUINARD**

v.

**N.H. SPEEDWAY.**

No. C–92–188–L.

United States District Court,
D. New Hampshire.

Aug. 9, 1993.

Laurence E. Kelly, Bossie, Kelly & Hodes, PA, Manchester, NH, for plaintiff.

Peter W. Mosseau, Nelson, Kinder, Mosseau & Gordon, PC, Manchester, NH, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LOUGHLIN, Senior District Judge.

Before the court is defendant New Hampshire Speedway's ("speedway") Motion for Summary Judgment (doc. no. 13) brought pursuant to Federal Rule of Civil Procedure 56(a). In this motion, defendant seeks that the complaint be dismissed as there are no genuine issues of material fact that defendant did not owe plaintiff a legal duty to protect plaintiff from the negligent drivers operating on a public way. The court previously denied defendant's motion to dismiss which raised similar arguments. See Order of the Court dated August 6, 1992, (doc. no. 10). However, affidavits submitted in support of the instant motion warrant a different ruling than that reached concerning the motion to dismiss.

The events that gave rise to this action occurred on July 14, 1990, the date on which plaintiff was injured when struck by an automobile while crossing at the intersection of Asby Road and Route 106 in Loudon, New Hampshire. Plaintiff was crossing the intersection in an attempt to pick up previously purchased tickets to the Inaugural Budweiser 300 Race held at the New Hampshire Speedway (defendant's premises) on that same date. Defendant's ticket booth was located at the intersection where plaintiff was struck.

Plaintiff alleges that she was forced to pick up her tickets at this booth even though she had purchased them months in advance and had requested the defendant to forward them to her at that time. Specifically, plaintiff states that she recalls ordering the tickets either the last week of June or the first week of July. (Doc. no. 14, Affidavit of Jean M. Chouinard attached to Objection to Motion to Dismiss at ¶ 3). Allegedly, defendant's representative indicated over the phone that the tickets would be mailed to plaintiff. *Id.* at ¶ 4. Plaintiff again called the defendant on either the Wednesday or Thursday preceding the July 15, 1990 race to determine the whereabouts of her tickets which had not yet been received. *Id.* at ¶ 5. During this telephone call, plaintiff was informed that due to the close proximity in time to the race, plaintiff would have to pick up the tickets at the speedway on July, 14, 1990, the day before the race. *Id.* at ¶ 6.

Defendant maintains that on July 5, 1990, it received a ticket order from plaintiff for the July 15, 1990 race. (Doc. no. 13, Exhibit C, Affidavit of Thomas Carr at ¶¶ 2–3). At the time of the ticket purchase request, defendant's policy was to mail event tickets to purchasers only if the order and payment were received at least two weeks in advance of the scheduled event. *Id.* at ¶¶ 5–6. Defendant contends that payment from plaintiff was not received until July 10, 1990. *Id.* at ¶ 6. It is further alleged that no tickets were sent to advance purchasers after July 4, 1990. *Id.* at ¶ 9. Instead, prepaid tickets could be obtained prior to race day in the lobby of the speedway's administrative building or on race day at one of the ticket booths. *Id.* at ¶ 7. It is noted that the main administrative building and ticket booths are located on the east side of Route 106 near the main grandstand. *Id.* at ¶ 8.

On Saturday, July 14, 1990, the day of the accident, a scheduled qualifying race was held. At approximately 3:00 p.m., plaintiff, accompanied by a companion who drove plaintiff up from Massachusetts to obtain the tickets, arrived at the speedway. Plaintiff alleges that an attempt was made to park on the side of Route 106 that was adjacent to the speedway but it became apparent that parking at that location was prohibited and made impossible by the placement of saw horses. (Doc. no. 14, Affidavit of Jean M. Chouinard, ¶ 12).

Plaintiff's companion turned the automobile around and parked on the opposite side of Route 106 across from the ticket booth at the intersection of Asby Road and Route 106. *Id.* at ¶ 14. Plaintiff exited the vehicle in order to cross Route 106 and obtain the event tickets. *Id.* at ¶ 16. While attempting to cross Route 106, plaintiff was struck by a northbound vehicle being operated by Barbara Cleveland. At the time of the accident, parking lots were available on the same side of Route 106 as the speedway. Nevertheless, plaintiff avers that use of the available parking lots would have been ludicrous since a parking fee was charged and since the parking lots were located a significant distance from the ticket booths. *Id.* at ¶ 19.

Loudon is a small, sparsely populated community south of Laconia. Access to the speedway is by State Highway 106 that consists of one northbound and one southbound lane. Apparently due to relatively limited access to the speedway along with concerns raised by abutters, the speedway entered into an agreement with the abutters and Town of Loudon in which, *inter alia*, the speedway covenanted that:

> during periods when it holds races which are expected to draw more than fifteen thousand patrons to the premises, it will arrange with the Town for traffic control personnel at the following locations and will reimburse the Town to the extent it requires: at the intersections of Route 106 and Asby Road, Clough Hill Road, Shaker Road, and at any other locations required by the Town or the State. In an emergency or during a bona fide shortage of personnel, it is understood that the Loudon Police Chief has the authority to control the assignment of police personnel.

(Doc. no. 9, Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Exhibit A at ¶ 8).

Submitted with the motion for summary judgment are the affidavits of police officers and the speedway president which state that the speedway is in no way whatsoever re-

sponsible or in any way charged with the duty to control the public way. Specifically, Gary Bahre, president of the speedway, states in his affidavit that the Loudon Police Department was in sole charge of traffic control and pedestrian safety on the Route 106/Asby Road intersection. (Doc. no. 13, Exhibit A at ¶ 8).

Loudon Police Chief Robert Fiske states that Route 106 is a public highway that is controlled by the state of New Hampshire and not the speedway. (Doc. no. 13, Exhibit B at ¶ 3). He fully admits that he is in charge of assigning officers to control traffic on Route 106 in Loudon including the number of officers assigned, their placement at the site, and how and in what manner automobile and pedestrian traffic will be directed on the road. *Id.* at ¶ 7. Chief Fiske also states that the speedway has no supervisory authority over the assignment of the officers or the actions of the officers when they are stationed to direct traffic in the vicinity of the speedway on a race day. *Id.* at ¶ 8.

Finally, Officer Arthur Merrigan, a member of the Pittsfield Police Department who worked a special detail on July 14, 1990 for the Loudon Police Department (doc. no. 13, Exhibit D at ¶ 2), indicates that in his opinion, the Loudon Police Department and not the Speedway is in sole charge of traffic control on Route 106. (Doc. no. 13, Exhibit D at ¶ 7). He further states that Chief Fiske was his supervisor on July 14, 1990 and that he was not accountable to the speedway's employees or management personnel. *Id.* at ¶ 6. Consistent with Chief Fiske's statements, Officer Merrigan indicates that the Loudon Police Department was solely responsible for the assignment, placement, and establishment of duties of the officers regarding traffic and pedestrian control on the public ways adjacent to the speedway on July 14, and July 15, 1990. *Id.* at ¶ 8.

It is noted that plaintiff has not countered these affidavit statements with any facts suggesting that defendant speedway had control over the police officers in charge of traffic control on the public ways adjacent to the speedway. Instead, plaintiff counters the motion for summary judgment by contending that there is a common law duty owed plaintiff by the speedway to guard against the actions of third party negligent automobile operators. This duty is said to arise as a result of the speedway's knowledge of the hazards created by increased traffic on race days and the speedway's alleged recognition of its ability to take appropriate steps to prevent the perceived hazard from becoming a recognized harm. Plaintiff avers that the above referenced consent agreement reflects the Speedway's knowledge of the potential harm and its recognition that it is capable of taking measures to prevent the harm from becoming manifest. (Doc. no. 14, Objection to Motion for Summary Judgment at ¶ 33).

Summary judgment is proper only if, viewing the record in the light most favorable to the nonmoving party, the documents on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988); Fed. R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit" are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; Oliver,* 846 F.2d at 105. The moving party initially must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has made the required showing, the adverse party must "go beyond the pleadings" and designate specific facts to demonstrate the existence of a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553; *Oliver,* 846 F.2d at 105; Fed.R.Civ.P. 56(e). The federal rules "mandate[ ] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

A federal court sitting in diversity must follow the common and statutory law of the state in which it sits. *Erie R. Co. v. Tomp-*

*kins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1928); *Lyons v. Salve Regina College,* 565 F.2d 200 (1st Cir.1977); *Mertens v. Abbott Labs,* 595 F.Supp. 834 (D.N.H.1984). Although there are no New Hampshire cases that are directly on point, there are at least two which provide some guidance for this court to predict how the New Hampshire courts would rule in this matter. To flesh out the law, reference will be made to case law that exists in other jurisdictions on this issue, case law that the New Hampshire courts would probably make reference to in trying to resolve this issue. *Cotton v. Minter,* 469 F.Supp. 199 (E.D.Mich.1979) (citing *Gustin v. Sun Life Assur. Co. of Canada,* 154 F.2d 961 (6th Cir.1946)).

In *Lane v. Groetz,* 108 N.H. 173, 230 A.2d 741 (1967), the plaintiff, a practical nurse by profession, slipped on a plowed portion of a street that was adjacent to the home owned by the decedent/defendant. In *Lane,* plaintiff asserted that the individual in charge of defendant's home called the town in order to request having the street in front of the house cleared of snow. The town had the snow cleared in front of defendant's residence.

Plaintiff contended that the town's agent should be deemed the decedent's agent as the street was cleared allegedly pursuant to the request made by the individual in charge of the residence. The *Lane* court indicated that defendant is under a duty that is limited to exercising reasonable care to see that activities conducted on her premises or conditions allowed to exist thereon, posed no threat to users of the public way. *Id.* at 176, 230 A.2d 741. The court concluded that the town's agents that cleared the street, without the supervision or control of the defendant or her agents, did not become defendant's agents such that it was defendant's duty to exercise reasonable care in removing the snow. *Id.* The town was ruled to have the duty to clear the streets regardless whether the action was taken at the behest of defendant's agent. The court did not find that defendant had any control over the public highway and therefore no duty of care towards the plaintiff with regard to the public way. *Id.* at 176–77, 230 A.2d 741.

Another case that provides some instruction in the present case is *Morin v. Manchester Housing Authority,* 105 N.H. 138, 195 A.2d 243 (1963). In *Morin,* the plaintiff was injured when she tripped and fell over a piece of wire that was attached on one end to a pole on defendant's property and on the other end to a tree on the opposite side of the sidewalk that abutted defendant's property. Apparently during the night, a third party detached one end of the wire and reattached it to a tree as described above. The *Morin* court stated that as owner of land that abuts a public highway, such owner is under a duty to prevent artificial conditions on the land from being unreasonably dangerous to travellers on the public highway. *Id.* at 139, 195 A.2d 243 (citations omitted). However, the court held that there is no duty to foresee and take preventive action against the intentional interference with the wire by others such that the injury to passers-by was likely. *Id.* at 141, 195 A.2d 243. Thus, the acts of the third party were held to be a superseding cause of the accident. *Id.* at 142, 195 A.2d 243.

In addressing cases factually similar to the *Morin* case in that a third party directly caused the plaintiff's injury on a public way that was not in the control of a landowner whose land abuts the public way, the courts of other jurisdictions have reached the same conclusion—there is no duty to protect against the negligent acts of third parties on uncontrolled public ways. *See e.g. Holter v. City of Sheyenne,* 480 N.W.2d 736 (N.D. 1992); *Swett v. Algonquin,* 169 Ill.App.3d 78, 119 Ill.Dec. 838, 523 N.E.2d 594 (2d Dist. 1988); *Naumann v. Windsor Gypsum, Inc.,* 749 S.W.2d 189 (Tex.App.1988); *Owens v. Kings Supermarket,* 198 Cal.App.3d 379, 243 Cal.Rptr. 627 (1st Dist.1988); *State v. Flanigan,* 489 N.E.2d 1216 (Ind.App. 1 Dist.1986); *Warrington v. Bird,* 204 N.J.Super. 611, 499 A.2d 1026 (1985); and *Safeway Stores, Inc. v. Musfelt,* 349 P.2d 756 (Okla.1960). Two of these cases involve fact patterns strikingly similar to the case at bar thus warranting a detailed review of both.

In *Owens v. Kings Supermarket, supra,* the plaintiff was injured when struck by an automobile that rolled from its parked posi-

tion such that plaintiff's legs were crushed between the rolling automobile and plaintiff's automobile which was double parked in front of a supermarket. Plaintiff double parked in order to purchase a newspaper from the supermarket. The gravamen of plaintiff's complaint was that the supermarket owed plaintiff a duty of care to control the acts of third parties on the public way adjacent to the supermarket. This duty was said to arise as a result of the supermarket's adaptation of the public street for its commercial benefit. Parking spaces on the public street were used by the supermarket's customers.

The *Owens* court upheld the trial court's decision sustaining defendant's demurrer that there was no duty since the supermarket had no control over the public street. Moreover, the court noted that the power to control public streets and regulate traffic lies with the state and local municipality and not with nongovernmental parties regardless of their actions. *Id.* 198 Cal.App.3d at 387, 243 Cal.Rptr. 627. One exception to this rule concerning street vendors was held inapplicable since street vendors are a unique form of business—a travelling business. The exception was not extended to businesses located on private properties with fixed locations. *Id.* at 388, 243 Cal.Rptr. 627.

Other cases cited by the *Owens* court that have relevance in the present case, concerned businesses that had insufficient parking spaces for their patrons. Patrons would ultimately have to use public parking spaces. The cases cited did not require the added obligation to the businesses to provide additional lighting or hire security guards to ensure the safety of the business' customers while on the unowned public street. It was clearly stated that to attempt to fashion such a duty would be futile.

Another case that is similar to the instant matter is *Holter v. City of Sheyenne, supra,* in which the court reached a decision consistent with the *Owens* decision. In *Holter,* a ten year old girl was struck and killed by an automobile when attempting to cross a highway. Shortly before attempting to cross the highway, the child patronized an ice cream establishment that was located adjacent to the public highway. Situated between the travelled portion of the highway and the business's property was a sixteen feet wide gravel shoulder. At the time of the accident, there was an automobile parked on the shoulder in front of the defendant's property. Apparently, the child attempted to run across the highway to join her friends who had crossed the highway at an earlier time. The automobile parked on the shoulder of the road obstructed the view of the child and the driver who struck the child on the travelled portion of the highway.

Decedent's parents claimed that the business breached its duty of care toward the decedent by failing to warn her of the dangers of crossing the highway and failing to request the city to restrict parking in front of the business so that the views of pedestrians and drivers alike would not be obstructed. The court, in making its ruling, indicated that it is recognized that a commercial property owner has a duty to provide a reasonably safe means of ingress to and egress from the premises. *Id.* at 738.

Notwithstanding this duty, the court held that the defendant did not owe a duty of care to the decedent for an accident that occurred on the public highway. The basis for this decision follows the rationale followed by other courts faced with similar fact situations. The *Holter* court ruled that no such duty can be imposed on the defendant as it had neither control over the vehicle that struck the decedent nor authority over parking or traffic regulation on the public highway. *Id.*

█ The rule of law that is derived from these cases can be summed up in one sentence. "The key factor to finding that a property owner owes no duty to an injured party is that *the owner has no control over the property where the injury occurred or the instrumentality causing the injury." Holter,* 480 N.W.2d at 738 (citing *Jacobs v. Anderson Building Co.,* 459 N.W.2d 384 (N.D.1990)) (other citation omitted) (emphasis added). With this rule in mind, the case cited by plaintiff in support of its objection to the motion for summary judgment can be easily distinguished.

The only case cited by plaintiff in support of its objection is *Foley v. Ulrich,* 94 N.J.Su-

per. 410, 228 A.2d 702 (1967). In *Foley*, the plaintiff was injured when she slipped and fell on ice that formed on the sidewalk in front of defendants' residence. Before the accident, one of the defendants shoveled the sidewalk to clear away newly fallen snow. After the snow had been shoveled and prior to plaintiff's accident, some of the snow which had been piled up on both sides of the sidewalk melted and flowed into a depression in the sidewalk. This water eventually froze into a thin layer of ice that was difficult to see. Defendants were aware that there was a tendency for ice to form in the depression in the sidewalk in front of their home.

Before making a finding, the *Foley* court recited the general principle under common law that a landowner has no duty to keep a sidewalk abutting his or her land free from the natural accumulation of snow and ice. *Id.* at 415, 228 A.2d 702. The court also cited the general tort law inquiries whether, under the circumstances, the defendant's conduct created an unreasonable risk of harm to the injured party and whether there was any duty extant running from the defendant to the plaintiff that was breached. *Id.* The *Foley* court upheld the trial court and found that a duty did exist and that defendants' breached this duty owed to plaintiff by shoveling the public sidewalk in a negligent manner. The court reviewed New Jersey case law and concluded that defendants' negligence in clearing the sidewalk created a new element of danger that was not the result of natural forces therefore defendants were found to be liable for plaintiff's injuries. *Id.* at 419, 228 A.2d 702.

The court has decided to review the *Foley* case in order to show that the facts of the case are sufficiently distinguishable from the instant matter such that the case is not controlling. However, even if the facts were similar, the court would not follow the rule enunciated in the *Foley* case as the case has been reversed by the Supreme Court of New Jersey. *See Foley v. Ulrich*, 50 N.J. 426, 236 A.2d 137 (1967). The New Jersey Supreme Court adopted the dissent in the *Foley* case cited by the plaintiff. The conclusion reached in the dissent is that an owner of property abutting a public sidewalk is under no duty to remove snow or ice from the sidewalk. The court further ruled that even though the defendants took it upon themselves to remove the snow by piling it up on the sides of the sidewalk, the act of removing the snow could not be deemed to have added a new element of danger or hazard as the ice that formed was the result of the snow melting from natural causes.

Notwithstanding the New Jersey Supreme Court's ruling, there is nothing in the present record that would suggest that the speedway created a new element of danger on the public way that would give rise to a duty to protect the plaintiff from the acts of a third party on a public way. The *Foley* rationale is thus not apposite.

Another case worthy of review in that it sheds further light on whether a duty should be imposed is *International Paper Realty Co. v. Bethune*, 256 Ga. 54, 344 S.E.2d 228 (1986). In this case, plaintiff was injured when he fell on an iron surveying pin which the defendants placed on the boundary line between their property and the adjacent property of another landowner. The plaintiff was using the public way abutting the defendant's property when the accident occurred.

The *Bethune* court stated the common law rule that a landowner maintaining an artificial condition on his land owes a duty of care to users of the adjacent public way who may, by accident or by some force not of their own volition, fall upon and be injured by the artificial condition. *Id.* at 55, 344 S.E.2d 228. Such a landowner owes a duty of care to guard, cover or protect the artificial condition for the safety of those on the public way. *Id.* Based on this rule, the court upheld the lower court's denial of defendant's motion for summary judgment.

The general rule that is derived from this case is that in order to impose a duty of care on a landowner to the benefit of users of an adjacent public way, there has to be some kind of action taken by defendant landowner which creates an unreasonable risk of harm to the public-way users. The present record does not reflect any action taken by the speedway that amounts to the creation of an artificial condition on its property.

Based on the present state of the record, the only plausible argument that could be made to find a duty, in the court's opinion, is that the establishment of a racetrack is the type of artificial condition that gives rise to a duty of care running from a landowner to pedestrians to protect them against the negligence of automobile drivers on the adjacent public ways. To impose such a duty on businesses located adjacent to public ways, an obvious business necessity for most businesses and certainly for a racetrack—customer access to the business establishment, would have a debilitating if not stifling effect on the establishment of commercial enterprises. As is clear from the cited cases with a few noted exceptions, the courts are reluctant to impose a duty on a landowner to protect individuals on adjacent public ways from the negligent acts of third parties. Absent any showing of control over the public way or third party, it has been uniformly held that no such duty is to be imposed on a landowner whose property abuts a public way.

Absent from both the motion and objection is any reference to any statutory or common law that indicates what party or entity is entrusted with the duty to regulate traffic on public ways. The answer to this question as gleaned from New Hampshire statutory law is dependent upon the type or classification of the public way in question. However, for purposes of this motion, as will become obvious upon recitation of the applicable statutes, the classification of the roads in question is not material to resolution of the issue whether the speedway has a duty to manage traffic on adjacent public ways.

N.H.Rev.Stat.Ann. § 236:1 provides that:

I. The commissioner [of public works and highways] may regulate the use of class I, class II, and class III highways in towns or cities without compact sections and in other towns and cities outside the compact portion thereof as determined by him, including the use of right-of-way.

II. The commissioner may establish stop intersections, erect stop signs, yield right-of-way signs, or other traffic devices or signals thereon or upon any way entering thereon.

(Supp.1992). Regulation of public ways by towns and cities is governed by the following provisions.

Unless regulated by the commissioner of public works and highways as provided in RSA 249:5, the selectmen may regulate the use of all public highways, sidewalks, and commons in their respective towns and for this purpose may exercise all the powers conferred on city councils by RSA 47:17, VII and VIII, and by any other provisions of the laws upon the subject.

N.H.Rev.Stat.Ann. § 41:11 (Equity 1991).

The city councils shall have power to make all such salutary and needful bylaws as towns and the police officers of towns and engineers or firewards by law have power to make and to annex penalties, not exceeding $1000, for the breach thereof; and may make, establish, publish, alter, modify, amend and repeal ordinances, rules, regulations, and bylaws for the following purposes:

\*       \*       \*       \*       \*       \*

**VII.** USE OF PUBLIC WAYS. To regulate all streets and public ways, wharves, docks, and squares, and the use thereof, and the placing or leaving therein any carriages, sleds, boxes, lumber, wood, or any articles or materials, and the deposit of any waste or other thing whatever; the removal of any manure or any other material therefrom; the erection of posts, signs, steps, public telephones, telephone booths, and other appurtenances thereto, or awnings; the digging up the ground by traffic thereon or in any other manner, or any other act by which the public travel may be incommoded or the city subjected to expense thereby; the securing by railings or otherwise any well, cellar, or other dangerous place in or near the line of any street; to prohibit the rolling of hoops, playing at ball or flying of kites, or any other amusement or practice having a tendency to annoy persons passing in the streets and sidewalks, or to frighten teams of horses within the same; and to compel persons to keep the snow, ice, and dirt from the sidewalks in front of the premises owned or occupied by them.

VIII. TRAFFIC DEVICES AND SIGNALS. To make special regulations as to the use of vehicles upon particular highways, except as to speed, and to exclude such vehicles altogether from certain ways; to establish stop intersections, erect and provide for the control of traffic by, stop signs or other traffic devices or signals which shall conform to standards set by the highway commissioner and shall be approved by him as to type, size, installation, and method of operation.

N.H.Rev.Stat.Ann. § 47:17 VII. (Equity 1991).

■■■ There is nothing in plaintiff's objection that would indicate that the state or Town of Loudon have in any way delegated their duty to regulate traffic on the public ways in question. There is not even a showing that either the state or the town or both are empowered to delegate this duty. In the court's opinion, all of the alleged questions of fact raised by plaintiff such as the dispute over whether it was communicated to plaintiff at the time of her ticket purchase that she could not receive her tickets through the mail, are questions of fact that are not material to the issue whether the speedway has authority to control traffic on Route 106 and Asby Road. At best, such a question of fact would relate to a potential breach of the contract formed when the plaintiff purchased the event ticket. As such, the court concludes that plaintiff has failed to meet her burden. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

■■ With regard to the Consent Decree, the court finds that paragraph eight which is relevant to the present issue merely indicates that the speedway has agreed to notify the town, at least two weeks in advance of a scheduled event, of the approximate number of patrons expected to attend so that the town and not the speedway can take appropriate action to ensure proper traffic control. The paragraph in no way indicates that the town or state has delegated its authority to regulate traffic on the public ways in question. Plaintiff's contention that the speedway failed to communicate to the Loudon Police Department the correct number of patrons that would attend the scheduled event on the day of the accident by not taking into account ticket purchases within two weeks of the event is at best a shortcoming of the terms of the Consent Decree which does not, in and of itself, give rise to any duty to control traffic on the public ways adjacent to the speedway.

There is perhaps a claim for breach of contract based on a theory of third party beneficiary to the Consent Decree agreement between the speedway and the Town of Loudon. Such a claim though is not before the court. All the questions of fact raised by the plaintiff would be relevant to this type of claim and not the issue whether the speedway has a duty to manage traffic on the public way.

It is incumbent on the court to decide whether there is a legal duty attributable to defendant to control traffic on the public ways adjacent to defendant's business establishment as such a determination is a question of law for the court to decide. *Paquette v. Joyce*, 117 N.H. 832, 834, 379 A.2d 207 (1977). Using the holdings of *Lane* case and the *Morin* case in conjunction with the holdings of the cases cited from other jurisdictions, the court is confident that if this issue were decided by a New Hampshire court, the state court would rule, as this court does, that there is no duty owed to plaintiff by defendant to guard against the negligent acts of third party tortfeasors on a public way over which the defendant has no control. Accordingly, defendant's Motion for Summary Judgment seeking the court to find that the defendant New Hampshire Speedway has no duty to control traffic on the roads adjacent to defendant's establishment is hereby granted.