94 N.J. Super. 410 (1967)
228 A.2d 702
MARGARET FOLEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM W. ULRICH AND LOIS ULRICH, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1967.
Decided March 30, 1967.
*412 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Samuel A. Gennet argued the cause for appellants.
Mr. Myron W. Kronisch argued the cause for respondent (Messrs. Roskein, Kronisch & Felzenberg, attorneys).
The opinion of the court was delivered by CARTON, J.A.D.
Plaintiff Margaret Foley fell on an icy sidewalk in front of defendants' property. In an action to recover for her injuries she claimed that defendants, in clearing the snow from the sidewalk, shoveled it in mounds on both sides of the sidewalk. When the snow melted, some of the water collected in a depression in the sidewalk. Plaintiff slipped and fell on the ice where the water froze.
The jury returned a verdict in plaintiff's favor. On this appeal defendants urge the trial court erred in denying their motion for involuntary dismissal at the conclusion of plaintiff's case and their motion for vacation of the judgment. They also assert error in the trial court's instructions to the jury.
Defendants insist that there was no proof that the property owners were responsible for the addition of a new element *413 of danger to the use of the sidewalk and that, even if the property owners negligently cleared the sidewalk, they are not liable because there was no new hazard other than that caused by natural forces.
Plaintiff testified that on December 26, 1965, shortly after 6 P.M., she was on her way home from work, got off a bus and walked along the Crawford Terrace sidewalk. It was already dark and the street lights were on. The weather was clear, although it had snowed on December 23 and 24. About seven inches of snow had fallen and was on the ground on December 24, according to official measurements made at Newark and Elizabeth.
Plaintiff was wearing low-heeled shoes with galoshes over them. Most of the sidewalks in the area had been shoveled and people had placed rock salt or sand and, in some cases, ashes on them. As she approached the sidewalk in front of the Ulrich property, she could see that the walk had been shoveled after the storm and that the snow had been heaped on each side.
The first knowledge plaintiff had of any ice on the sidewalk was after she fell. Just past the front steps to the Ulrich house, she started to fall forward, slipped about three feet or more, turning around on her right arm. She then saw "a complete sheet of ice, clear ice, frozen water * * *. It was just clear. You couldn't see it." Her right arm snapped Later it developed she had sustained a transverse fracture of the upper arm requiring an open reduction and the insertion of a steel pin the length of the humerus.
She was unable to see the ice as she approached. When asked what prevented her from seeing it, she said:
"It looked like the rest of the sidewalk. It was water that had melted  I mean the snow that had melted and frozen over solid. You couldn't see that ice."
Describing the width of the iced area, she said, "It went from snow to snow." The ice "began in front of the front steps and went down towards Carlyle Place" for a length of *414 "about five feet." The flagstones in front of the Ulrich property were "crooked and slanted."
Miss Foley managed to make her way to defendants' door where she informed them of the fall. Mr. Ulrich proceeded to the icy portion which he described in his deposition of having "a minimum of say three and a half, four feet in length across the approach to our house." He said, "* * * there was an irregularity in the sidewalk, a mismatching of the seam. * * * I do know that a large area of the block was covered with water  with ice."
He conceded that, after his wife had shoveled the snow from the sidewalk, some snow had melted and flowed down on the sidewalk area, and that this water had frozen on the sidewalk. Describing his previous experience as to the water flowing on the sidewalk, he said:
"Some days there would be no drainage onto the sidewalk at all. In [sic] other days, of course, there would be and it would be necessary to keep the salt on because the ice would form over a large area."
In the general area in front of defendants' premises the grade was downhill. Mr. Ulrich acknowledged also that, in the ordinary course of events, any water that flowed onto the sidewalk would flow down the grade, except to the extent that these irregularities in the sidewalk caused some to be blocked, caught and frozen. One of the depressions, he said, could have a maximum depth of an inch.
On defendants' case, Mrs. Ulrich was the sole witness. She averred that her husband had originally shoveled the sidewalk on December 23 and 24. At about 3 P.M. on December 26, she saw some snow had been blown on the sidewalk and she went out to shovel it. She claimed she placed salt on its entire length in front of her property and there was no ice left on the sidewalk when she completed the shoveling. She admitted that her reason for placing salt on the concrete was: "Sometimes ice forms and I wanted to prevent this."
*415 Although she denied being aware of any depression in the sidewalk, she admitted knowing the sidewalk was uneven. She had also observed salt particles did remain in one particular spot near the block in front of the walk leading to her house.
The general principles are clear. Under common law an owner has no duty to keep the sidewalk abutting his land free from the natural accumulation of snow and ice. This general rule was restated in Saco v. Hall, 1 N.J. 377 (1949). Likewise, under common law an abutting owner is not responsible for defects in the sidewalk caused by the action of the elements or by wear and tear incident to public use. Nor is he liable, under ordinary circumstances, for injuries suffered by a pedestrian on a defective or dilapidated sidewalk. See Moskowitz v. Herman, 16 N.J. 223 (1954), where Justice Jacobs' dissenting opinion suggests that the time may be ripe for a re-examination of this doctrine.
To these general principles certain well-recognized exceptions have been established. As in all other cases, the general inquiry common to all tort law must be made whether, under the circumstances, the defendant's conduct created an unreasonable risk of harm to the injured party and whether defendant violated any duty to the injured pedestrian.
Our Supreme Court has expressed itself clearly in relatively recent cases involving icy sidewalks. In Gellenthin v. J. & D. Inc., 38 N.J. 341 (1962), it stated that there is no longer any special "surface water law," but rather the liability for the various harms which a landowner might cause to others by disposition of surface water is to be governed by applicable tort principles.
Gellenthin held that if a landowner constructs or maintains artificial conduits of surface water in such a manner that the water thus collected is so discharged that it reaches the public sidewalk and there freezes, making the sidewalk dangerous to traveler, he is chargeable with negligently creating an unreasonable risk of injury. The court there *416 enunciated the doctrine that where the action is between a landowner and a pedestrian who suffers an injury through an obstruction of the public sidewalk, the general principles of negligence must be applied.
Gellenthin represents a logical progression of the principles adopted in Saco v. Hall, supra, an earlier case involving a somewhat similar factual situation. In Saco the court, in weighing the competing interests of the landowner and the pedestrian, stressed the public easement to use the sidewalk for safe travel and its "right to assume that there is no dangerous impediment or pitfall in any part of it." (at p. 382)
The theory underlying the rule that a landowner should be under no duty to keep the sidewalk bordering his land free from the natural accumulation of snow is that the traveler should be expected to endure the ordinary hazards created by natural conditions, including ice formed by the natural and incidental flow of surface water from melting snow and ice over the public sidewalk. However, a necessary corollary to such a rule must be that the traveler should not be expected to assume responsibility for a peril which, but for the conduct of the property owner, would not have existed at all, or might not have existed for the same length of time or to the same degree.
Thus, it was said in Saco that where the property owner, through his negligence in cleaning the sidewalk, adds a new element of danger or hazard other than the one caused by natural forces to the safe use of the sidewalk by the pedestrian, he is liable.
Gentile v. National Newark & Essex Banking Co., 53 N.J. Super. 35 (App. Div. 1958), represents an application of this principle. There a pedestrian was injured when he fell while attempting to negotiate a mound of snow blocking the sidewalk, created when the owner shoveled the snow from the sidewalks. The court there held that the jury could find that the owner's agents, in causing the mound of snow, created a *417 new element of danger or hazard which was a proximate cause of the fall and the consequent injuries.
Applying these principles to this case, we are convinced that the jury could have inferred from the evidence that when the defendants heaped the snow on both sides of the sidewalk they created a new element of danger to the traveling public other than that caused by natural forces.
Defendants were fully aware, from their own knowledge and experience, of the uneven sidewalk generally, and particularly at the point where plaintiff fell. They were cognizant that, although the downward slope of the land in that area ordinarily resulted in the water draining off the sidewalk, water from the melted snow simetimes became trapped and frozen on the sidewalk. Thus, superimposed upon the condition created by the slanted and uneven flagstones, was the known danger that water from melted snow accumulating in the depressed area might freeze and become slippery.
It has been held that where the melting snow from an unshoveled sidewalk would have frozen in any event, rendering the sidewalk equally as dangerous, if not more so, than when shoveled, the pedestrian may not recover. Taggart v. Bouldin, 111 N.J.L. 464 (E. & A. 1933). As the court said in that case, to hold the property owner answerable for damages under such circumstances because an effort was made to keep the sidewalk clear and reduce the danger would result in an injustice. (at p. 467)
Under the circumstances of this case, however, the jury could well find that there was no certainty and indeed no probability that had the snow remained unshoveled on the sidewalk, the water from the melted snow would not have evaporated or drained off. The evidence warranted the further conclusion that water melting from heaps of snow on both sides of the sidewalk near the declivity in the sidewalk would almost inevitably tend to accumulate therein and that such accumulation might exist sufficiently in quantity and for a period long enough in time to form a sheet of ice several feet in length, covering the sidewalk from "snow to snow." *418 Thus, the jury was fully justified in concluding that the physical area of danger had been expanded or its duration prolonged, or both, as a result of defendants' activities and that one or both of these ingredients combined to intensify the hazard which existed.
The jury was consequently justified in determining that the shoveling of the sidewalk had rendered it more dangerous and that the owners, in doing so, had introduced a new element of danger for which they could be held answerable to the injured pedestrian. In these important respects the factual situation here presented differs from that before the court in Taggart and other reported cases in this State involving icy sidewalks.
We see no distinction between a dangerous sidewalk condition created under such circumstances and the obstruction caused by an icy condition resulting from the maintenance of artificial devices or conduits on the landowner's property. Both are equally dangerous to the members of the traveling public.
Plaintiff, as a lawful user of the public easement, had no means of protecting herself from the risk here encountered. She had no reasonable alternative to walking along the sidewalk. Had the sidewalk remained uncleared, a generalized condition would alert her to the necessity to proceed with caution. See Casey v. City of Philadelphia, 372 Pa. 284, 93 A.2d 470 (Sup. Ct. 1953). Here she did not know and had no forewarning that a localized area of the sidewalk of considerable expanse might be glazed with transparent ice.
How should the care which defendants should be required to exercise and the reasonableness of their acts or omissions under such circumstances be determined? By weighing the gravity of the risk involved and the extent of the danger to be apprehended by the pedestrian against the magnitude of the burden cast upon the property owner in requiring him to guard against such danger and any utility which might result from not imposing such responsibility.
*419 Here there obviously existed a grave risk of personal injury to plaintiff which defendants could or should reasonably have apprehended. By creating an appearance of safety which veiled the dangers inherent in the condition of the walk, defendants effectively deprived plaintiff of any opportunity to choose between alternative routes for safe transit or taking precautions to guard against the additional hazard.
On the other hand, no significant additional burden would be imposed upon the property owner to require that, once having undertaken to shovel the sidewalk, he do so in a manner so as not to create such a dangerous condition, or spread sufficient abrasives, sand or salt on the glazed area to render it safe for pedestrian travel. Nor would the imposition of such a duty, in our opinion, deter property owners from clearing their sidewalks with a resultant disservice to the public interest.
Whether defendant, in fact, spread salt on the sidewalk as she claimed, or did so in a proper manner, was, of course, an issue for the jury to resolve.
Under all the circumstances in the case, we conclude that a jury question was presented and the trial court properly denied defendants' motion for involuntary dismissal and for vacation of the judgment.
We see no merit in defendants' contention that, under the court's instruction to the jury, the jury could have found them liable without fault or that it may have been confused. A fair reading of the charge in its entirety satisfies us that the court properly instructed the jury on the issue of negligence and that the instruction was not confusing or misleading.
Affirmed.
KOLOVSKY, J.A.D. (dissenting).
It is settled law "that an owner of property abutting a public sidewalk is under no obligation to pedestrians to keep the sidewalk free from snow and ice which accumulate thereon from natural causes," and that even if there be a snow removal ordinance, it "creates *420 no duty running from the property owner to [the pedestrian]." Brown v. Kelly, 42 N.J. 362, 363 (1964); Sewall v. Fox, 98 N.J.L. 819 (E. & A. 1923).
Implicit in my brethren's opinion is an acknowledgment that if defendants, as abutting landowners, had made no effort to keep the sidewalk in front of their property free from snow and ice, they would not be liable for plaintiff's injuries even if, as is charged here, plaintiff slipped on ice formed by water from melting snow which allegedly became trapped and frozen in an uneven portion of the sidewalk.
Here, however, defendants did clear the snow from the sidewalk, shoveling it into mounds on both sides of the sidewalk and thereafter, according to Mrs. Ulrich, placing salt on the entire length of the cleared sidewalk. The majority opinion concludes that those facts afford a basis for liability for plaintiff's fall on the icy sidewalk since the jury could have found from the evidence
"that when the defendants heaped the snow on both sides of the sidewalk they created a new element of danger to the traveling public other than that caused by natural forces,"
or that Mrs. Ulrich had not spread salt as she said she had or that she did not do so in a proper manner.
The majority concludes:
"* * *, no significant additional burden would be imposed upon the property owner to require that, once having undertaken to shovel the sidewalk, he do so in a manner so as not to create such a dangerous condition, or spread sufficient abrasives, sand or salt on the glazed area to render it safe for pedestrian travel. Nor would the imposition of such a duty, in our opinion, deter property owners from clearing their sidewalks with a resultant disservice to the public interest."
Since, in my opinion, the rule so enunciated by the majority and the determination made by it in this case are contrary to the law as promulgated in pertinent decisions of the highest court of this State, I dissent. If present policy considerations dictate that the law be changed and replaced *421 by the rule stated in the majority opinion  and I am not persuaded that they do  the decision to do so must be made by the Supreme Court.[1] We, as an intermediate appellate court, are bound by the prior final determinations of the highest court of this State, be it the present Supreme Court or its predecessor the Court of Errors and Appeals. Bacon v. Atlantic City Transp. Co., 72 N.J. Super. 541, 547 (App. Div. 1962), affirmed o.b. 38 N.J. 529 (1962); Severini v. State, etc., Div. of Alcoh. Bev. Cont., 82 N.J. Super. 1, 5 (App. Div. 1964); Gruschow v. N.J. State Highway Dept., 56 N.J. Super. 146, 150 (App. Div. 1959).
Any discussion of the problem must start with Aull v. Lee, 84 N.J.L. 155 (Sup. Ct. 1913). In that case, the former Supreme Court overruled a demurrer to a declaration which alleged that defendant was the owner of property adjoining a public flagstone sidewalk, with an open lawn between defendant's house and the sidewalk;
"* * * that during a snowstorm great quantities of snow fell and lodged upon the sidewalk in front of said lawn where it remained until the following day when she caused it to be removed from the sidewalk, and for her own convenience deposited it upon the lawn and there permitted it to remain for a long space of time, and not regarding her duty in that behalf, did not use due and proper care in the placing of sufficient guards or protection about the said snow so that water, resulting from the melting of the snow, could not run along and upon the said sidewalk in front of said premises and there congeal into ice, but wholly neglected and failed so to do, thereby permitting the water resulting from the melting of the snow to run along and upon the said sidewalk where it hardened and congealed into ice; that by reason of the premises the plaintiff, while lawfully and carefully walking upon the said sidewalk, slipped on the ice so formed, and was thereby thrown to the ground and suffered severe injuries."
After noting that there would be no liability if the snow had been permitted to remain on the sidewalk, the court said:
*422 "* * * the only material question presented is whether the piling of snow, in large quantities, upon the defendant's property adjacent to the sidewalk, from which the conditions stated resulted, charges sufficient negligence to support an action for the injuries the plaintiff suffered.
We are of opinion that a party is responsible for the results flowing from the artificial accumulation of snow upon his premises, adjoining a sidewalk, and there left to discharge water at times when the natural result would be to form ice upon the sidewalk." (p. 156)
Some recession from the doctrine of the Aull case appeared two years later in Lightcap v. Lehigh Valley R.R. Co., 87 N.J.L. 64, 67 (Sup. Ct. 1915). A judgment for defendant was affirmed after a retrial in 90 N.J.L. 620 (E. & A. 1917).
Aull was again distinguished in Arning v. Druding, 96 N.J.L. 47, 48 (Sup. Ct. 1921), in which the only factual distinction appeared to be that the snow instead of being piled on defendant's lawn was piled in the area between the sidewalk and the hedge in front of defendant's property.
Finally, in Taggart v. Bouldin, 111 N.J.L. 464 (E. & A. 1933), Aull was expressly repudiated by the Court of Errors and Appeals, the court saying:
"We disapprove of the doctrine laid down in the case of Aull v. Lee, 84 N.J. Law 155, and, in order that there may be no further misunderstanding or confusion about it the opinion in that case is expressly overruled." (at p. 468)
In Taggart, defendant owner of premises abutting a flagstone sidewalk had the sidewalk shoveled off. Some of the snow was thrown toward the curb and some on defendant's lawn. The snow melted during the day, water therefrom trickled across the sidewalk and froze when the weather turned colder at night. It was at night that plaintiff slipped on the icy sidewalk, fell and fractured her leg. In affirming a nonsuit on plaintiff's opening, the court said:
*423 "There was no duty on the owner of the premises to shovel off this sidewalk. There is no allegation that any action of the defendant increased the hazard that exists on sidewalks during the snowy period of the winter. The property owner cannot be made out to be an insurer of the safety of pedestrians using the sidewalk.
The action of the defendant, in having the sidewalk shoveled off, introduced no new element of danger; rather the opposite resulted and the danger was lessened. Had the snow been left on the sidewalk, the warmth of the sun would have melted that snow as well as that which fell upon the lawn, converting it into water which, when the temperature fell, would have frozen, rendering the sidewalk equally, if not more, dangerous to pedestrians, and, if the plaintiff under those conditions had fallen and sustained injuries, she would have no cause of action. Sewall v. Fox, 98 N.J. Law 819. Since this be so, to hold a property owner answerable in damages, for injuries received because an effort is made to keep the sidewalk clear and to reduce the danger to pedestrians, would result in a hardship and an injustice. No duty existed at common law to keep the sidewalk in front of one's premises free from ice and snow. Cf. Sewall v. Fox, supra; no duty arises by statutory enactment and, consequently, no breach of duty or actionable negligence arose here, where the defendant, property owner, cleared the sidewalk by having the snow shoveled off, some towards the curb and some towards or over the property line." (at p. 467)
Taggart has been consistently approved in the later cases. Den Braven v. Public Service Electric & Gas Co., 115 N.J.L. 543, 545 (E. & A. 1935); Corbett v. Warner, 137 N.J.L. 281 (Sup. Ct. 1948); MacGregor v. Tinker Realty Co., 37 N.J. Super. 112, 115 (App. Div. 1955); see also, Saco v. Hall, 1 N.J. 377, 381 (1949); Gentile v. National Newark & Essex Bkg. Co., 53 N.J. Super. 35 (App. Div. 1958).
The majority is of the view that the jury could have found from the evidence that by clearing the snow and piling it on each side of the sidewalk defendants added "a new element of danger or hazard, other than one caused by natural forces * * * to the safe use of the sidewalk by a pedestrian." Saco v. Hall, supra, 1 N.J., at p. 381.
I do not agree. The danger to the safe use of the sidewalk which existed when plaintiff fell was solely that caused by natural forces, the freezing of melting snow, a natural phenomenon which would have occurred if defendants had not shoveled the sidewalk, particularly since defendants' lawn *424 sloped toward the sidewalk. As the court said in Taggart, supra:
"Had the snow been left on the sidewalk, the warmth of the sun would have melted that snow as well as that which fell upon the lawn, converting it into water which, when the temperature fell, would have frozen, rendering the sidewalk equally, if not more dangerous to pedestrians." (111 N.J.L., at p. 467)
See also the same court's comment in Den Braven v. Public Service Electric & Gas Co., supra:
"It is well known that travel upon streets and sidewalks after falls of snow disturbs the integrity of the original snowfall, and that such disturbance tends to cause alternate thawing and freezing which might not otherwise exist." (115 N.J.L., at p. 544)
No element of danger or hazard other than one caused by natural forces was created by defendants. Cf. MacGregor v. Tinker Realty Co., and Gentile v. National Newark & Essex Bkg. Co., supra.
In MacGregor it appeared that defendant's building superintendent had excavated a narrow path in the fallen snow on the adjacent sidewalk, allegedly leaving an undercoating of ice. In affirming the trial court's action in granting a motion for involuntary dismissal at the conclusion of plaintiffs opening statement, this court said:
"A thorough inspection of the transcribed opening statement of the plaintiff's attorney discloses that he proposed to prove that the defendant's superintendent `had made a stab at giving some passageway'; that the path `was negligently dug out,' and that `there was a little layer of ice underneath this snow which the defendant did not clear up.' Nowhere in the opening statement can be discovered a proposal to prove that in excavating the path the defendant's superintendent created a new element of danger other than one caused by nature." (37 N.J. Super., at p. 115)
Gentile v. National Newark & Essex Bkg. Co., supra, presents a situation in which the landowner did create a danger or hazard other than that caused by natural forces. There defendant blocked the crosswalk which lead to the sidewalk *425 in front of defendant's premises with a mound of snow. Plaintiff had climbed onto the mound and was proceeding down it when she fell. In reversing a judgment of involuntary dismissal, the court said:
"We are of the opinion that the jury could reasonably infer from the answers to the interrogatories that defendant's agents piled the sloping mound of snow at the crosswalk. * * *
We further are convinced that the jury could infer that it is much more difficult and hazardous for a pedestrian to mount a mound of snow than if it were level, and so that there was more chance of falling when one was forced to descend into the snow on a sloping descent. If we assume plaintiff's rather uncertain testimony can be said to amount to evidence that there was ice underneath the snow and that such ice was the immediate cause of her fall, it was still open to inference that the sloping mound was itself also an efficient cause. That is sufficient to establish liability of the party responsible for the latter even where a natural condition is a concurring cause. Menth v. Breeze Corporation, Inc., 4 N.J. 428, 442 (1950); Van Cora v. Trowbridge Outdoor Advertising Corp., 18 N.J. Super. 1, 4 (App. Div. 1952). The jury could, therefore, have found that when defendant's agents created the sloping mound of snow across the opening at the crosswalk, they created a new element of danger or hazard to plaintiff other than what was already present due to natural forces, and that this new element was a proximate cause of the plaintiff's fall and subsequent injuries." (53 N.J. Super., at p. 40)
It is evident that Gentile has no application to the situation presented in the instant case.
I respectfully suggest that the majority's ruling that the jury could infer that defendants "created a new element of danger * * * other than that caused by natural forces" from the fact that defendants cleared the sidewalk and heaped snow on both sides thereof is contrary to Taggart and the cases following it and is in essence a restatement of the repudiated doctrine of Aull v. Lee.
Finally, I find no warrant in existing law for the majority's ruling that liability may be imposed on defendants if the jury found that they did not spread salt over the cleared sidewalk or failed to do so in a proper manner. Cf. MacGregor v. Tinker Realty Co., supra; Corbett v. Warner, 137 N.J.L. 281, 283 (Sup. Ct. 1948); *426 Ferguson v. Mikulsky, 10 N.J. Misc. 599, 160 A. 89 (Sup. Ct. 1932).
In my opinion, defendants' motion for dismissal should have been granted.
I would reverse and direct entry of judgment for defendants.
NOTES
[1] Less than three years ago, the Supreme Court expressly refused to change the rule stated in the first paragraph of this opinion. See Brown v. Kelly, 42 N.J. 362 (1964)