[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This is a personal injury action. The plaintiff claims he was injured when he fell in the parking lot of a post office. The allegation made by the plaintiff is that the defendant snowplow contractor failed to properly clean and sand the parking lot. The defendant alleges that "discovery has revealed that at the time the plaintiff fell, a snow storm was in progress" and has moved for summary judgment. The manner in which the plaintiff contests this motion seems to assume that, at least for purposes of this motion, a storm was in progress.
The defendant cites the case of Kraus v. Newton,211 Conn. 191, 197-198 (1989), for the proposition that a person in control of property does not owe invitees upon the property a duty to exercise reasonable diligence in removing dangerous accumulations of snow until the end of the snowstorm and a reasonable time thereafter. Kraus stated the rule would apply "in the absence of unusual circumstances" and based its reasoning on practical considerations: "To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical." Id., p. 198. Am. Jur. cites another obvious reason for the general rule "removal would be ineffective during the continuation of a snowstorm in progress." 62 Am. Jur.2d § 708 at p. 278.
The plaintiff makes several arguments to rebut the defendant's claim that Kraus requires that his case be dismissed.
First he argues that Kraus does not apply to a snow removal contractor and only provides protection for a landlord or other CT Page 12767 party in control of premises. Assuming that an action such as this can be brought against a snow removal contractor, the court agrees with the defendant that Kraus applies to such a party. The impracticality and ineffectiveness of requiring snow removal during an ongoing storm apply just as well to the landowner as they do to the contractor the landowner has hired to meet the requirements of the landowner's nondelegable duty. Having Kraus
not apply to contractors the landowner hires would substantially increase the rates these contractors charge skewer indemnification agreements and indirectly defeat the purposes ofKraus by imposing, in the long run, financial burdens on landowners not contemplated in Kraus.
A second argument the plaintiff makes is that the post office had internal directives that required snow removal operations to commence before the end of any snowstorm — such operations were to take place regardless of whether the storm had come to an end apparently. The memos establishing this policy are attached to the opposition brief but nothing by way of affidavits or deposition testimony indicates that the snow removal contractor was made aware of the policy. The brief merely states "it is inconceivable" that the manager of this post office did not make this policy of removing snow and ice before a storm ended known to the defendant snow removal contractor. That cannot be relied upon by the court. But even assuming the contractor had been made known of this higher standard of care, a landowner or contractor who adopts such a higher standard should not be held liable for failure to comply with that standard absent detrimental reliance. As this court said in Guertin v. Servus, Inc., et al WL55154 (1995): "It would certainly lead to a counter-productive result and be bad social policy if courts held that parties who went beyond standards of care explicitly required by law would be liable to parties injured not because of the mandated standard of care but by reason of the higher standard of care adopted by the particular defendant. People would be punished for exercising more care and making premises safer than the law required. There might be some substance to the plaintiff's position if he claimed he somehow relied on the defendant's prior actions in removing ice or sanding while a storm was in progress and that induced reliance led to his accident."
A final argument raised by the plaintiff is more persuasive. The plaintiff refers to deposition testimony stating that when he entered the post office he carefully walked across the parking lot taking advantage of the light snow that had fallen on top of CT Page 12768 the ice to provide traction. While he was in the post office, the defendant plowed away the snow, left sheer ice and did not spread any abrasive material on the ice. When the plaintiff exited the, the previous traction he had relied on was no longer there and he slipped on the ice and injured himself. For the purposes of this motion, the defendant does not dispute these factual claims.
The plaintiff's argument is that despite Kraus and its holding that during a snowstorm there is no duty to engage in snow removal activities, there is liability in a situation where during a snowstorm a landowner or snow removal contractor does attempt to remove snow and ice and, by such actions, makes the conditions for invitees worse and more dangerous. This is not theGuertin case. A party is not being held liable for injuries caused by failure to take certain safety measures not required by law but previously taken on a voluntary basis. Absent a reliance factor, the law does not want to discourage people from generally going beyond the requirements of the law to protect people.
Here action was taken which was not required, and the claim is made that the action taken was done negligently and made the situation worse. What possible social policy would be advanced by not imposing liability in such a situation? What is the cost benefit analysis to be applied — the law wants to encourage people to take steps to make others safe so much that when they attempt to do so, although not required to by law, liability is not imposed liability even if their attempt is so negligent that someone is injured? No rational social policy should encourage affirmative acts of negligence in a situation where the actor could have chosen to do nothing at all.
In fact, in several areas of the law tort liability is imposed on so-called gratuitous actors where they act negligently.
 Thus, the more recent cases indicate that while a gratuitous actor may have no legal duty to assist someone, yet when he has undertaken to render assistance he must follow through with the undertaking in a reasonable and prudent manner. The modern trend of the courts has been to search for a point of beginning of the undertaking. While there is still no liability in tort for nonperformance of a gratuitous promise, if the promisor has commenced performance in any particular, he is held to the requirement of performing the act with reasonable care. As Professor Leon Green stated in a letter CT Page 12769 to the Connecticut Bar Journal in 1950:
 "In case of gratuitous undertakings, the common law has always imposed liability on the undertaker for the consequences of his negligence under the doctrine of affirmative conduct."
 Thus, if a landlord, who ordinarily has no duty to repair, gratuitously undertakes to make repairs and does so negligently, he may be held liable (see § 58, post).
Connecticut Law of Torts, Wright, Fitzgerald, Ankerman, § 31 at page 54.
Restatement (Second) Torts.
 "Section 323. One who undertakes gratuitously or for consideration, to render services to another which he (sic) should recognize as necessary for the protection of the other person or things is subject to liability to the other for physical harm resulting from his (sic) failure to exercise reasonable care to perform (the) undertaking; if
 (a) (the) failure to exercise such care increases the risk of harm; or
 (b) the harm is suffered because of the other's reliance upon the undertaking."
Prosser, Torts 5th Ed. at § 56 notes:
 "If there is no duty to go to the assistance of a person in' difficulty or peril there is at least a duty to avoid any affirmative acts which make (the person's) situation worse . . A truck driver may be under no obligation whatever to signal to a car behind him (sic) that it may pass safely; but if the (truck driver) does signal, the (trucker) will be liable if (the trucker) fails to exercise proper care and injury results. . . . The result of all this is that the good Samaritan who tries to help may find himself (or herself) mulcted in damages, while the priest and the Levite who pass by on the other side go on their cheerful way rejoicing."
At pp. 380-381, Prosser notes where performance has clearly begun by the actor there "is no doubt there is a duty of care" CT Page 12770 and "in most of the cases finding liability, the defendant has made the situation worse, either by increasing the danger by misleading the plaintiff into the belief that it has been removed, or by depriving (the plaintiff) of help from other sources." That this is the thrust of the common law is reflected in the fact that in most states statutes have had to be passed absolving a doctor who gratuitously renders emergency aid from all liability for negligence. See our § 52-557(b); like the statutes of many states, the "good Samaritan is absolved of liability only for "ordinary negligence," not "gross, wilful or wanton negligence." See Prosser at p. 378, footnote 57, referring to similar legislation in other states.
Two cases illustrate the reasoning imposing liability in these situations.
In Foley v. Ulrich, 228 A.2d 702 (N.J. 1967), property owners shoveled their sidewalk and piled snow on both sides of the walk. This made conditions worse than if they did nothing because a declevity in the sidewalk caused water to collect and freeze making it very slippery and the plaintiff slipped on the ice and fell. The court noted that under New Jersey law, an owner has no obligation to keep the sidewalk abutting his or her land free from the natural accumulation of ice and snow, id. p. 704. But the court noted the property owner here created "an appearance of safety which vieled the dangers inherent in the condition of the walk . . . no significant additional burden would be imposed upon the property owner to require that, once having undertaken to shovel the sidewalk, he do so in a manner so as not to create such a dangerous condition or spread sufficient abrasives, sand or salt on the glazed area to render it safe for pedestrian travel." The court noted: "Had the sidewalk remained uncleared, a generalized condition would alert her (the plaintiff) to the necessity to proceed with caution," id. p. 706. A similar case isNelson, et al v. Schultz, et al, 11 N.Y.S. 2d 184 (1939), where, in another slip and fall case, the court noted: "Had the defendant in the instant case done nothing except to permit the snow and ice, as it fell, to remain undisturbed, there would undoubtedly be no cause of action against her for the injuries to an innocent passerby . . . having, however, undertaken to remove such snow and ice, the defendant was bound to do so in a reasonable and prudent manner and to avoid setting any traps and pitfalls. She failed in this duty by not removing all of the snow and ice once she had undertaken to do so, and by leaving the remaining snow and ice in an irregular, hilly and slippery condition," id. p. CT Page 12771 186.
All of this does not interfere with the policy or reasoning of Kraus. It still makes sense to say that it is impractical to require a party, who has the responsibility to do so, to keep an area safe while ice and snow still falls. But if you do take this gratuitous obligation on yourself, you face liability if you make the situation worse.
Based on the foregoing discussion, the court will deny the defendant's motion for summary judgment.
Corradino, J.