NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3851-23

DEBRA GOTTSLEBEN,

     Plaintiff-Appellant,

and

JOHN J. DELANEY, JR.,

     Plaintiff,

v.

CHRISTOPHER ANNESE,
MAUREEN N. ANNESE,

     Defendants-Respondents,

and

TOWN OF MORRISTOWN,

     Defendant.

<div style="border:1px solid black; display:inline-block; padding:8px; text-align:center;">

**APPROVED FOR PUBLICATION**

**July 3, 2025**

**APPELLATE DIVISION**

</div>

Argued June 16, 2025 – Decided July 3, 2025

Before Judges Sabatino, Smith, and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1436-22.

Anthony P. Caivano argued the cause for appellant.

John P. Gilfillan argued the cause for respondents Christopher Annese and Maureen N. Annese (Kennedys CMK LLP, attorneys; John P. Gilfillan, of counsel and on the brief; Eric M. Gonzalez, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

In this slip and fall case, plaintiff attempts to expand the principles of sidewalk liability for commercial properties to a residential property that was unoccupied and undergoing renovations. For reasons that follow, we uphold the trial court's rejection of plaintiff's invitation to adopt such expanded principles of liability.

As an alternative argument, plaintiff contends the common law protection for residential property owners was nullified here because the defendant homeowners allegedly increased the sidewalk's slippery condition by negligently clearing snow from it. We reject this contention as well. Even viewing the record in a light most favorable to plaintiff, the trial court properly deemed the evidence insufficient to present a genuine issue of material fact as to whether the homeowners had worsened the sidewalk's actual condition before plaintiff's slip and fall. The undisputed record establishes that the photographs plaintiff crucially relies upon to prove the sidewalk's supposedly worsened condition at the time of her fall were taken much later, after an intervening

winter snowstorm—according to plaintiff's weather expert—had deposited as much as another 3.5 inches of snow in the area. The weather data thus undermined plaintiff's contentions about the nature of the sidewalk's condition at the time of the accident, rendering her theory of liability untenable.

We therefore affirm summary judgment and the dismissal of the complaint in this distinctive factual setting.

## I.

Our discussion is guided by these facts in the motion record, which we have viewed in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Pantano v. N.Y. Shipping Ass'n, 254 N.J. 101, 115 (2023) (reiterating and applying the Brill standard).

Plaintiff Debra Gottsleben's fall took place on a public sidewalk in front of a single-family house in Morristown that defendants Christopher and Maureen Annese purchased in October 2020.[1] As they explained at their depositions, defendants did not move into their house immediately because they wanted to renovate it first. Defendants intended to upgrade the house for their

---

[1] Because defendants share the same surname, we shall refer to them by their first names for ease of reference. No disrespect is intended.

own occupancy, and not for resale purposes. They hired a general contractor to undertake the renovations.[2]

The renovations took place between October 2020 and August 2021, when defendants finally moved in. Christopher testified that, during that ten-month period, he visited the property about once or twice each week.

Plaintiff[3] slipped and fell on the sidewalk in front of defendants' house on the morning of February 18, 2021, sometime after 6:00 a.m. and before 7:30 a.m. According to plaintiff's liability expert, a meteorologist, it had snowed 15.6 inches on February 1 in Morristown, 6.2 inches on February 7, and 1.8 inches on February 11. The report further noted a drizzle occurred on February 14, and a freezing drizzle and a "snowfall/ice trace" with a liquid equivalent of .07 inches occurred on February 15.

On the day of plaintiff's fall, February 18, it snowed an additional 3.5 inches in what the expert described as a "complex winter storm and snow event." The report stated that light snow began at or about 7:15 a.m., transitioning to a

---

[2] The record does not contain the contract between defendants and the general contractor. In any event, defendants do not contend it was the contractor's responsibility to shovel and treat the sidewalk after a snowstorm.

[3] Plaintiff's husband, John J. DeLaney, Jr., was not accompanying her at the time of her fall. He died of unrelated causes sometime after the accident. Although he was originally listed as a co-plaintiff in the complaint, we shall refer to Debra Gottsleben, his spouse, as "plaintiff."

steadier snowfall at 8:00 a.m. The snow continued from 8:00 a.m. to 12:15 p.m., when it changed to flurries. According to the expert, the snow ended by 1:30 p.m., with a total accumulation of new snow that day of 3.5 inches. The weather changed in the afternoon to fog and drizzle, and eventually became cloudy by 6:45 p.m. The temperature that day ranged from 23 to 27 degrees Fahrenheit and never rose above freezing. In her deposition testimony, plaintiff acknowledged it was snowing at the time she fell.

Christopher testified he was aware of a Morristown ordinance requiring owners to remove snow from the sidewalks in front of their premises within twelve hours of a storm ending.[4] He asserted that he and Maureen abided by that ordinance, even though they were not yet living in the house. Christopher further testified it was their habit to spread rock salt after clearing the snow.

Plaintiff testified that, at the time she departed alone for her walk on February 18, "it was not dark [outside], it was lighter." She had been wearing

---

[4] The ordinance requires owners to "remove snow, ice, or other obstructions from the sidewalk in front of [their] premises within [twelve] hours after the storm has ended, unless the storm ends between the hours of 9:00 p.m. and 12:00 a.m. In that event, the sidewalk shall be cleared by 12:00 p.m. (noon) of the following day." Town of Morristown, N.J., Code § 18-6.1. The ordinance further specifies that "[i]n case of ice which may be so frozen as to make removal impracticable, such person[s] shall cause the frozen walkway to be thoroughly covered with sand or ashes within [twelve] hours of daylight after the same shall fall or be formed thereon." Ibid.

"fairly new all-weather sneakers." In her interrogatory answers, plaintiff described the sidewalk in front of defendants' property as "inadequately cleared," alleging that a layer of partially shoveled, packed snow and ice covered the sidewalk and that no ice-melt product, salt, or sand appeared to have been spread.

As plaintiff recounted, she observed some "standing ice," but not "black ice," on the sidewalk before she fell. She could not recall whether the sidewalk "appeared to have been shoveled within the last couple of days." However, plaintiff did recall that she could not see the concrete slabs of the sidewalk because they were covered with "an accumulation of [s]now and ice." By plaintiff's account, "all of a sudden" she slipped on ice as she was walking on the sidewalk in front of defendants' property. Plaintiff believed she slipped in a forward direction, then landed on her back and "hit the ground very, very hard."

Plaintiff immediately went for treatment at two separate medical facilities. She sustained multiple fractures in her left ankle, eventually undergoing surgery. In this lawsuit she claims damages for her personal injuries resulting from her fall, although the issues on this appeal exclusively concern liability.

Plaintiff's husband took several photographs of the sidewalk after she fell. Plaintiff accompanied him when the photos were taken. The record does not specify the exact time the photos were taken, although plaintiff testified they

6

were taken either "in the afternoon of [her] fall or the following morning." The photographs, copies of which were provided to us on appeal, depict snow about a foot high on either side of the sidewalk abutting defendants' property. The sidewalk in the photos is generally covered in what appears to be a few inches of ice, snow, or a mixture of both, visibly packed down by multiple footprints from pedestrian use. The concrete surface of the sidewalk appears to be visible in one or more spots. In one of the photos, a portion of the nearby street with a blacktop surface free of snow can be seen. The photos also depict patches of blue sky with some clouds, indicative of fair weather.

Plaintiff repeatedly testified that the photos fairly and accurately depicted the condition of the sidewalk on the morning when she fell, sometime after 6:00 a.m. and before 7:30 a.m. She specifically described the photos as "a good representation of what it looked like during the accident." When shown the photos at his own deposition, Christopher testified that he and his wife would have left the sidewalk in better condition than the photographs depicted.

After discovery, defendants moved for summary judgment. They argued that, as residential property owners distinct from commercial owners, New Jersey caselaw does not impose on them a duty to keep the public sidewalk in front of their premises reasonably safe. Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 149 (1981). Plaintiff countered that because the property was vacant at the

time she fell and it was undergoing construction that could enhance the property's value, defendants—as a matter of public policy—should be governed by the same sidewalk liability principles as commercial owners.

Alternatively, if the court declined to treat defendants like commercial owners (or some "hybrid" version thereof), plaintiff argued that defendants were nonetheless liable as residential owners for allegedly worsening the sidewalk's condition due to their poor shoveling and treatment of the sidewalk. Citing language from Section 5.20B(B)(2)(a) of the <u>Model Jury Charges (Civil)</u>, plaintiff submitted that defendants are liable if "in undertaking to remove the ice and snow from defendant[s'] sidewalk, [they] <u>created a new hazard or increased the existing hazard</u> and that this new or increased hazard <u>proximately caused or concurred with</u> the natural hazard to cause plaintiff's injuries." (Emphases added).

Plaintiff further contended that because the most recent snow before the February 18 winter storm had ended several days before her fall, defendants had ample time to clear and treat the sidewalk competently before that date. She argued the photos, the weather expert's report, and her deposition testimony, when considered in combination, created a genuine issue of material fact as to whether defendants negligently worsened the sidewalk's natural condition.

Defendants argued in opposition there is no proof they worsened the

natural condition of the sidewalk. No witness refuted defendants' efforts, as described in Christopher's deposition, that defendants shoveled and treated the sidewalk after the snowfall that preceded plaintiff's accident. The defense contended plaintiff's proofs failed to substantiate negligent worsening and causation, and that her theory of liability was speculative and therefore inadequate to present to a jury.

The trial court granted defendants' motion and dismissed the complaint. In a written opinion, the motion judge found that defendants' property could not fairly be treated as commercial under sidewalk liability principles. The court pointed out that the property was not used for investment nor to generate a profit, defendants always intended to live there, and the ongoing renovations at the time of plaintiff's fall did not alter the property's residential status.

Applying residential sidewalk liability standards to the facts, and construing all reasonable inferences in favor of plaintiff, the court ruled that defendants were entitled to summary judgment. The court observed that plaintiff's proofs were insufficient to impose liability on defendants as residential property owners.

Plaintiff essentially makes two arguments on appeal. First, she renews before us the same novel policy arguments for treating defendants' unoccupied property the same as commercial premises under sidewalk liability law. Second,

she argues in the alternative that there are genuine material issues of fact as to whether defendants worsened the sidewalk's natural condition through poor shoveling and treatment.

II.

A.

For over a century, New Jersey courts have grappled with the question of whether property owners should bear civil liability for failing to maintain the safe condition of a public sidewalk adjoining their premises. In 1923, the Court of Errors and Appeals noted and applied the common law principle that "an abutting owner . . . owes no duty to maintain the street or sidewalk in front of his house or premises, and is not responsible for any defects therein which are not caused by his own wrongful act." Sewall v. Fox, 98 N.J.L. 819, 822-23 (E. & A. 1923) (quoting Courtney v. Cent. R.R. Co. of N.J., 18 N.J.L.J. 173, 173-74 (Cir. Ct. 1895)). As a corollary to that common law rule, our courts have declined to impose civil liability upon homeowners for noncompliance with municipal ordinances that require them to remove accumulations of snow and ice on sidewalks abutting their residences. Ibid. (trial court properly held that no civil liability attached to homeowners for noncompliance with a municipal sidewalk ordinance); see also Lodato v. Evesham Twp., 388 N.J. Super. 501, 507 (App. Div. 2006) (reaffirming that same proposition).

Over time, these principles of sidewalk liability have evolved in our state's caselaw, resulting in what is now known as a "bright-line" between commercial and residential properties. Padilla v. Young Il An, 257 N.J. 540, 560 (2024) (comprehensively tracing the historical development of the caselaw). In Stewart, 87 N.J. at 157, our Supreme Court acknowledged that the "no liability" rule continued to be dominant at that time in most American jurisdictions. Even so, the Court majority in Stewart reasoned in 1981 that commercial owners "retain considerable interest[s] in and rights to use sidewalks over and above the public" and should be incentivized to repair them, so imposing sidewalk liability on commercial property owners "will provide a remedy to many innocent plaintiffs for injuries caused by improper maintenance." Id. at 157-58. Hence, since 1981, commercial property owners in our state have been civilly liable for failing to maintain sidewalks adjacent to their premises, whereas residential owners have been insulated from such liability unless their conduct is proven to worsen the sidewalk's natural condition.

Two years after Stewart, our Supreme Court extended the commercial property owner's duty specifically to include "removal or reduction of the hazard of snow and ice dependent upon the standard of care of a reasonably prudent person under the circumstances." Mirza v. Filmore Corp., 92 N.J. 390, 400 (1983). However, our caselaw continues to hold that residential owners are not

exposed to tort liability for failing to comply with municipal ordinances requiring them to clear snow and ice from their adjoining sidewalks. Qian v. Toll Brothers, Inc., 223 N.J. 124, 136 (2015).

The Court clarified the demarcation between commercial and residential ownership in Luchejko v. City of Hoboken, 207 N.J. 191 (2011). In that case, the Court held that a condominium association will be treated as residential for sidewalk liability purposes as long as the building it operates is used predominantly for residential purposes and the association does not generate a profit for the individual unit owners. Id. at 206-08, 211. The Court recognized that a condominium association can spread the costs of a sidewalk injury by purchasing insurance or raising the assessment on unit owners but concluded that was insufficient to impose a higher duty of care. Id. at 207-08.

In a similar vein, we held in Briglia v. Mondrian Mortgage Corporation, 304 N.J. Super. 77, 80 (App. Div. 1997) that a mortgagee that becomes the owner of residential property at a foreclosure sale does not assume the obligations of a commercial owner to maintain the sidewalk, provided the property remains vacant and unrented.

The most recent New Jersey opinion on this topic was the Court's divided four-three opinion last term in Padilla, 257 N.J. at 540. There, a plaintiff was injured on a sidewalk in front of a commercially zoned property that was vacant

A-3851-23

and had no building or active business enterprise on the premises. Id. at 544. The Court majority held that, regardless of whether the owner was reaping or could be reaping a profit from the vacant premises, the bright-line demarcation between commercial and residential properties is "the most workable rule to protect the general public and ensure consistency in our courts." Id. at 560. The Court therefore held the owner in Padilla to the sidewalk maintenance responsibilities of a commercial owner. Id. at 563. The dissenting justices disagreed, declaring that imposing blanket sidewalk liability on all commercially zoned properties regardless of their capacity to generate profit is unwise and infringes on the Legislature's authority to enact statutes addressing the subject. Id. at 571.

B.

1.

With this backdrop in mind, we turn to plaintiff's threshold legal argument that courts should apply the principles of sidewalk liability for commercial properties to residential properties, such as defendants' home, during a period when the premises are unoccupied and undergoing renovation or construction. We decline to apply such an exception to the bright-line rule established in Stewart. We reach that determination for several reasons, given the factual record before us.

It is undisputed that defendants' intention was to move into the house they purchased after the renovations were completed. In fact, that intention is consistent with defendants' conduct in selling their former residence and moving temporarily into different rented premises while their contractor performed renovations on the home.

As the Court explained in Padilla, caselaw had previously stated that "if the property is owned for investment or business purposes, the property is often deemed commercial." Padilla, 275 N.J. at 553 n.1 (quoting Mohammed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 493 (App. Div. 2012)). Here, there is no evidence that defendants had acquired the house as an investment property to be improved and then sold. Nor is there proof that defendants were planning to lease the house to others. Although defendants were not living there at the time of plaintiff's fall, the property continued to be zoned as residential and intended for use as a residence. There was nothing "commercial" about defendants' ownership.

We recognize that the renovations to the house would likely increase its value in the market, and that defendants might profit if they sold it in the future. But, as the Court majority recently explained in Padilla, a case-by-case judicial assessment of profitability as a basis for determining sidewalk liability would be "an unworkable approach that will only further confuse our commercial

sidewalk liability law, lead to inconsistent results, and unfairly harm the public." Id. at 560.

Hence, it is inconsequential to our analysis that the market value of defendants' home might increase after the renovations were completed. Profitable or not, the renovation of the property did not change its residential character under Stewart and its progeny. The law should not deter New Jerseyans from renovating their homes out of a concern that vacating the premises to enable such improvements will transform residents into commercial owners for purposes of sidewalk liability.

It is not our role to create new exceptions to the sidewalk liability principles that have been repeatedly enunciated and modified by the Supreme Court. See, e.g., State v. Carrero, 428 N.J. Super. 495, 511 (App. Div. 2012) (declining the defendant's request that, as an intermediate appellate court, we reconsider the Supreme Court's holding on the admissibility of Alcotest results); State v. Hill, 139 N.J. Super. 548, 551 (App. Div. 1976) (same). Further, as both the majority and the dissenting justices in Padilla noted, this is a subject that could affect large numbers of New Jersey homeowners and sidewalk pedestrians and could be a public policy matter of interest to the Legislature. Padilla, 257 N.J. at 563 (majority opinion); id. at 571-72 (Solomon, J., dissenting).

In short, the trial court properly applied the principles of residential

15

sidewalk liability to the facts of this case rather than the commercial standards advocated by plaintiff.

2.

Assuming, therefore, that residential sidewalk liability standards apply here, we turn to the trial court's application of those standards. We review on appeal the facts in the summary judgment motion record de novo, in a light most favorable to plaintiff. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

As we noted above, under Stewart and its progeny, a residential owner is not civilly liable for a hazardous condition of the public sidewalk abutting the owner's property unless the owner's conduct made the natural condition of the sidewalk more dangerous. In applying these principles, the trial court's opinion stated that it was guided by Foley v. Ulrich, 50 N.J. 426 (1967), a residential snow and ice removal case in which the Supreme Court adopted the dissenting opinion of Judge Kolovsky of this court. Foley v. Ulrich, 94 N.J. Super. 410, 419-26 (App. Div. 1967) (Kolovsky, J., dissenting).

The facts in Foley involved a pedestrian who slipped and fell on a sidewalk in front of the defendants' residential property. Id. at 412. The plaintiff claimed she "slipped on ice formed by water from melting snow which allegedly became trapped and frozen in an uneven portion of the sidewalk." Id. at 420.

16

The defendants "clear[ed] the snow from the sidewalk, shoveling it into mounds on both sides of the sidewalk." Ibid. According to the defendants, they thereafter "plac[ed] salt on the entire length of the cleared sidewalk." Ibid.

The majority of this court in Foley concluded that those facts created a basis for the homeowners to be liable. Id. at 415-19. The majority ruled that a jury could have found from the evidence that, by clearing the snow and piling it close to each side of the sidewalk, the homeowners added a new element of danger or hazard beyond that which had been caused by natural forces. Id. at 418. Judge Kolovsky disagreed with that analysis. He reasoned that "[t]he danger to the safe use of the sidewalk which existed when [the] plaintiff fell was solely that caused by natural forces, the freezing of melting snow," noting this was "a natural phenomenon which would have occurred if [the] defendants had not shoveled the sidewalk." Id. at 423. "No element of danger or hazard other than the one caused by natural forces was created by [the] defendants." Id. at 424.

We recognize there are some factual differences between Foley and the present case. For instance, the dangerous condition in Foley resulted in part from the defendant's negligent placement of mounds of snow adjacent to and sloping towards the sidewalk, which thereafter melted, ran onto the sidewalk, and refroze. Id. at 412. Here, plaintiff does not present a claim of improper

17

mounding, nor does she rest upon a theory of melting and refreezing. But we need not address whether those factual differences are legally consequential because, for the reasons we now discuss, plaintiff's proofs about the nature and extent of the dangerous condition at the time of her fall are contradictory and insufficient.

Plaintiff's theory of defendants' liability for allegedly worsening the sidewalk's condition is critically dependent on her repeated contentions that the photographs her husband took were a fair and accurate representation of how the sidewalk looked when she fell sometime between 6:00 a.m. and 7:30 a.m. on February 18. She also affirmatively relied on the photos as evidence in her interrogatory answers. But her assertions are objectively undermined by the timing of the photographs and the weather data in her own expert's report.

The undisputed record directly contradicts and negates the factual assertion by plaintiff—that the photos purportedly represent a true and accurate depiction of the sidewalk's worsened snow and ice condition at the time of her fall. As we have noted, plaintiff could not specifically recall at her deposition the sidewalk's snow or ice condition at the spot where she fell. She testified she could not "honestly" remember "what [the sidewalk area] looked like anymore." She admitted she would "have to speculate" whether she noticed mounds of snow in the area.

18

Plaintiff conceded it was snowing at the time she fell before 7:30 a.m. on February 18. Her expert opined within a reasonable degree of meteorological certainty that on the day of plaintiff's fall it snowed between 7:30 a.m. and 1:30 p.m. and that 3.5 inches of new snow accumulated, with temperatures all day below freezing. Plaintiff went for treatment at two separate medical facilities immediately after the fall. She was present when the sidewalk photographs were taken by her husband—either on the afternoon of the fall (i.e., after 12:00 noon) or the next day, February 19. As we have noted, the photos in the record depict the adjacent roadway's clear blacktop surface and a blue sky. [5]

The objective proofs show that, by the time the photos were taken, the February 18 winter snowstorm—the one that deposited an additional 3.5 inches of snow—had ended or at least had substantially completed. The condition that plaintiff claims she saw between 6:00 a.m. and 7:30 a.m. could not have been the same condition that is depicted in the photos taken later in either the afternoon of February 18 or on the following day. The intervening winter storm undermines her theory. In short, plaintiff's evidence is contradictory and thereby

---

[5] Although not essential to our analysis, the blue sky is indicative that the photos were most likely taken on the 19th, given the weather data reflecting the winter storm and foggy conditions on the afternoon of the 18th. In either event, the photos clearly were taken after the post-accident winter snowfall had occurred.

A-3851-23

deficient.

A plaintiff cannot surmount a defendant's motion for summary judgment with proofs that are contradictory. See, e.g., Metro Mktg., LLC v. Nationwide Vehicle Assurance, Inc., 472 N.J. Super. 132, 152 n. 5 (App. Div. 2022); Carroll v. N.J. Transit, 366 N.J. Super. 380, 388-89 (App. Div. 2004) (holding a plaintiff's interrogatory response that flatly contradicted his own deposition testimony was insufficient to create a genuine dispute of material fact); Mosior v. Ins. Co. of N. Am., 193 N.J. Super. 190, 195 (App. Div. 1984) (noting that a plaintiff could not "create an issue of fact simply by raising arguments contradicting his own prior statements and representations"). Claims ought not go to a jury based on pure speculation. Merchants Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005) (stating that mere speculation will not bar summary judgment); see also Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (likewise applying this principle).

Plaintiff's assertions that the sidewalk photos demonstrate a true and accurate depiction of the sidewalk condition at the time of her fall are directly contradicted by her own proofs. Hence, even viewing the record in a light most favorable to plaintiff, there are no genuine material questions of fact to support her claim that the defendant homeowners are liable for the condition depicted in

20

the photos and that they worsened the natural condition.

If a jury were permitted to impose liability in these circumstances based on contradictory evidence and speculation, the policy consequences for homeowners could be detrimental. That said, we recognize, of course, the offsetting public policies of promoting pedestrian safety. But it is not our prerogative to repudiate or expand the Supreme Court's precedents and adopt a different approach to the liability issues.[6]

We therefore affirm the entry of summary judgment and the dismissal of the complaint on these distinctive facts, in which there was an intervening and substantial winter storm between the time of plaintiff's fall and the photos taken of the location. The outcome here should not be misconstrued to signify that no conceivable set of facts can support a homeowner's liability for worsening the natural condition of ice and snow on an adjacent public sidewalk. But, for the

---

[6] We note that the Restatement (Third) of Torts provides that "a possessor of land adjacent to a public walkway has no duty under this Chapter with regard to a risk posed by the condition of the walkway to pedestrians or others if the land possessor did not create the risk." Restatement (Third) of Torts: Phys. & Emot. Harm § 54 (Am. Law. Inst. 2012). The commentary observes, however, a trend toward "expansion of the duties of land possessors to a general duty of reasonable care with regard to natural conditions." Id. at cmt. 3. Possessors of noncommercial land have a duty of reasonable care, "but the duty is limited to known and patent risks." Ibid. We are mindful our Supreme Court has not adopted the approach of the Restatement (Third) of Torts, but we mention it simply for comparative purposes and neither endorse nor refute it.

reasons we have set forth, on this record, plaintiff's claims were properly dismissed.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3851-23